**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**NATIONAL INTERSTATE
INSURANCE COMPANY,**
an Ohio insurance company,

      Plaintiff/Counter-Defendant,

  vs.                        Civil No.    **01-1446 MCA/WDS**

**PENNY EMERSON**,
a New Mexico resident,

      Defendant/Counter-Plaintiff.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on *Defendant/Counter Plaintiff's Motion for Declaratory Judgment Regarding Stacking* (Doc. No. 96) and *Plaintiff/Counter Defendant National Interstate's Motion for Summary Judgment on Complaint for Declaratory Judgment and Counterclaim for Declaratory Judgment and Breach of Contract Concerning Commercial Insurance Policy's Uninsured Motorist Benefits* (Doc. No. 170). The Court, having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, denies Defendant/Counter Plaintiff's motion and grants in part Plaintiff/Counter Defendant's motion for the reasons set forth below.

**I.     FACTUAL BACKGROUND**

Plaintiff National Interstate Insurance Company (NIIC) is an Ohio based corporation authorized to transact insurance business in New Mexico. (Def's. Undisputed Facts ¶ 7 & Pl. Undisputed Facts ¶ 7). Defendant Penny Emerson (Emerson) is an officer of Native Resource Development, Inc. (NRD). (Pl. Ex. 5). NRD is in the business of providing non-essential medical transport to its clients in Arizona and New Mexico. NRD was originally incorporated as a Navajo Nation corporation in 1990; however, its corporate status lapsed in 1996. (Emerson Dep. at 13-14). Emerson considered reincorporating in Arizona or New Mexico, but later reincorporated NRD as a Navajo Nation corporation in June 2001. (Emerson Dep. at 13-14; Def's. Undisputed Facts ¶ 2). The incident giving rise to the issue before the Court (an automobile accident) occurred in August 2001.

NIIC issued a commercial automobile policy to NRD with a policy period from December 6, 2000 to December 6, 2001. (Pl. Ex. 1). The policy provided liability, uninsured, and under-insured coverage to twenty-six vehicles, both in New Mexico and Arizona. (Ex. 1; Def's. Undisputed Facts ¶ 8 and Pl's. Undisputed Facts ¶ 8).

The policy named "NATIVE RESOURCE DEVELOPMENT, INC." as the insured. (Ex. 1). It described the policy as "COMMERCIAL AUTO LIABILITY." (Ex. 1). The policy's business auto coverage declarations mentioned the form of business as a corporation. (Pl's. Ex.1; Pl. Ex.9). The policy did not contain any choice of law provisions. (Def's. Undisputed Facts ¶ 13). The policy was finalized in Gallup, New Mexico. (Ex.1).

The policy was issued through Mueller & Associates Insurance Agency, and Emerson

communicated with David Krzyzyanowski, an agent of Mueller & Associates, regarding various coverage issues. (Ex.1; Emerson Dep. at 177-180). Mueller & Associates submitted NRD's application to NIIC. (Pl. Ex. 3). The application referred to NRD as a corporation and as the insured. (Id.). Penny Emerson signed the application under the title "owner." (Ex. 16 to Def/counter Pl. Reply).

On August 11, 2001, Emerson was involved in an accident with an uninsured motorist. (Compl. ¶ 6). Emerson demanded that NIIC stack the uninsured motorist benefits under the policy aggregating uninsured motorist coverages on all twenty six vehicles. NIIC paid Emerson a single, unstacked, uninsured motorist coverage, primarily on the grounds that she is not the named insured and, therefore, is not entitled to stacking. NIIC filed the present declaratory judgment action to determine whether the policy issued by it provided the stacked uninsured motorist coverage to Emerson. Emerson and NRD filed an Answer and Counter-Claim against NIIC for its failure and refusal to perform the insurance contract. Emerson requested that the Court declare her as a "Class 1 insured," thereby allowing her to stack the uninsured motorist coverage on the twenty six vehicles insured by NIIC. (Doc. No. 96).

## II. DISCUSSION

### A. Standard of Review

Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### B.  Choice of Law

As a related matter, NIIC argues that Arizona law applies to the Arizona uninsured motorist endorsements. NIIC argues that Arizona law permits limitation on stacking and, therefore, the stacking limitations on Arizona garaged vehicles are valid. Emerson argues

that Arizona law does not control, and that New Mexico and Navajo law instead control the issue of limitation on stacking because NIIC contracted with a Navajo business and Navajo individual.

This raises the important conflict of law question: Whether the substantive law of Arizona or New Mexico should be applied by the federal court sitting in this diversity case. See Pound v. Ins. Co. of N. Am., 439 F.2d 1059, 1062 (10th Cir. 1971). Fundamental to any diversity case is the Erie doctrine which, in simple terms, requires federal courts to apply the law of the forum state. See id.; Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941) (holding that federal courts sitting in diversity must apply the forum state's choice of law provisions in making the choice of law determinations); Tucker v. R.A. Hanson Co., 956 F.2d 215, 217 (10th Cir. 1992); Devery Implement Co. v. J.I. Case Co., 944 F.2d 724, 727 (10th Cir. 1991). Under the conflict of rules in the state of New Mexico, an insurance contract is to be interpreted under the law of the place where the contract was consummated. See Sheppard v. Allstate Ins. Co., 21 F.3d 1010, 1011 (10th Cir. 1994) (applying North Carolina law); Pound, 439 F.2d 1059 (applying New York law); State Farm Mut. Ins. Co. v. Conyers, 109 N.M. 243, 784 P.2d 986 (1989) (holding that New Mexico law applies, even though the insured is residing in Nevada and the accident happened in Nevada when the contract was written in New Mexico).

In the present case, it is undisputed that the policy entered between the parties lacks any choice of law provisions. (NIIC Response at ¶ 13). It is also undisputed that the policy was executed and issued to NRD in Gallup, New Mexico. (Pl's. Ex. 1); (NIIC's Mot. for

Summ. J. at 3). Under these circumstances, the Court determines that New Mexico law applies because the contract was consummated at Gallup, New Mexico, and this undisputed fact is dispositive under the forum state's choice-of-law provisions. As noted, NIIC conceded that NRD purchased automobile insurance in Gallup, New Mexico. There is sufficient evidence in the record from which it can be inferred that the application to secure coverage was made in Gallup, New Mexico. Thus, the last act necessary to make insurance effective occurred in New Mexico. See id. at 248, 784 P.2d at 991.

### C. Stacking

Stacking refers to "an insured's attempt to recover damages in aggregate under more than one policy or one policy covering more than one vehicle until all damages either are satisfied or the total policy limits are exhausted." Morro v. Farmers Ins. Group, 106 N.M. 669, 670, 748 P.2d 512, 513 (1988) (internal citations omitted); Lopez v. Found. Reserve Ins. Co., 98 N.M. 166, 168, 646 P.2d 1230, 1232 (1982). New Mexico courts recognize two kinds of stacking: judicial stacking and policy stacking. Judicial stacking is a rule of construction applied by the courts based on public policy. Under judicial stacking, a Class 1 insured is entitled, as a matter of law, to aggregate all uninsured coverages purchased with separate premiums. See Morro, 106 N.M. at 670-71. In a judicial stacking context, a "Class 1 insured" refers to those persons who are named insured under a UM policy. See id. In contrast, "policy stacking" refers to a policy which expressly grants a right to stack coverages. If the policy is unambiguous, the insured who is entitled to policy stacking is determined by the policy's language and definitions, and the coverage is enforced as written.

See Richardson v. Farmers Ins. Co. of Ariz., 112 N.M. 73, 74, 811 P.2d 571, 572 (1991); see also Jaramillo v. Providence Washington Ins. Co., 117 N.M. 337, 339, 871 P.2d 1343, 1345 (1994).

In the present case, the dispute concerns the policy language regarding whether or not Emerson falls under the definition of "Class 1 insured." Thus, it is a policy stacking issue and not a judicial stacking issue. As such, the Court will primarily consider the language of the policy and the circumstances surrounding the policy.

### D.     Interpretation of Insurance Contracts

It is well settled that the construction of an insurance policy is governed generally by the law of contracts. See Vargas v. Pac. Nat'l Life Assurance Co., 79 N.M.152, 155, 441 P.2d 50, 53 (1968). Questions regarding insurance policies are resolved by interpreting their terms and provisions in accordance with the principles that govern the interpretation of contracts. See Rummel v. Lexington Ins. Co., 1997-NMSC-041 ¶ 18, 123 N.M. 752, 945 P.2d 970.

The analysis of the insurance policy proceeds with the primary goal of ascertaining the intentions of the contracting parties with respect to the challenged terms at the time they executed the contract. See Strata Prod. Co. v. Mercury Exploration Co., 1996-NMSC-016 ¶ 29, 121 N.M. 622, 916 P.2d 822. When discerning the purpose, meaning, and intent of the parties to a contract, the Court's duty is confined to interpreting the contract that the parties made for themselves and, absent any ambiguity, the Court may not alter or fabricate a new agreement for the parties. See CC Hous. Corp. v. Ryder Truck Rental, Inc., 106 N.M. 577,

579, 746 P.2d 1109, 1111 (1987); Ponder v. State Farm Mut. Auto. Ins. Co., 2000-NMSC-033 ¶ 11, 129 N.M. 698, 12 P.3d 960; Montoya v. Villa Linda Mall, Ltd., 110 N.M. 128, 129, 793 P.2d 258, 259 (1990); cf. Richardson, 112 N.M. at 74, 811 P.2d 572 (holding absent ambiguity, provisions of a contract need only be applied, rather than construed or interpreted). In construing insurance policy provisions, ambiguities arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy. See Rummel, 1997-NMSC-041 ¶ 19, 123 N.M. 752, 945 P.2d 970. If such ambiguities cannot be resolved by examining the language of the insurance policy alone, the court may look to extrinsic evidence to resolve the ambiguity. See Jaramillo, 117 N.M. at 341, 871 P.2d at 1347; Mark V, Inc. v. Mellekas, 114 N.M. 778, 782, 845 P.2d 1232, 1236 (1993)

A general rule of insurance law is that the ambiguities in an insurance policy are to be construed against the insurer. See Jaramillo, 117 N.M. at 341, 871 P.2d at 1347. However, this general rule of construction is not applicable to all situations. For example, the general rule may not apply when a third party is not expressly named as the insured, or when a third party is not acknowledged as a family member. See Jaramillo, 117 N.M. at 341, 871 P.2d at 1347. Usually, third persons are not parties to a contract of insurance, and are not entitled to a construction in their favor in determining whether that third person is an insured under the policy. See Atlas Assurance Co. v. Gen. Builders, Inc., 93 N.M. 398, 401, 600 P.2d 850, 853 (Ct. App. 1979).

Even when an ambiguity concerns an expressly named insured, a court is not precluded from examining the facts of a case to determine what the parties intended the contractual language to mean. See Crawford Chevrolet, Inc. v. Nat'l Hole-In-One Ass'n, 113 N.M. 519, 521, 828 P.2d 952, 954 (1992); Jaramillo, 117 N.M. at 341, 871 P.2d at 1347. In cases where the question is whether a third-party beneficiary is entitled to coverage, if the premium-paying insured and the insurer agree as to what they intended, that should be controlling. See id. at 341, 871 P.2d at 1347. The parties must produce evidence of the objective intentions of the parties to the contract, such as premiums paid for coverage. See id. In the absence of extrinsic evidence of intent, the third-party beneficiary may well take advantage of applicable rules of contract construction. See id. However, if the ambiguity gives rise to the question whether a third party is or is not the intended beneficiary of specific stacking provisions, the third party is not entitled to the rule of construction that ambiguities must be decided against the insurer. See id. The third party has the burden of proof. See id.

In the present case, Emerson argues that NRD was not a corporation at the time she purchased the policy (December 2000). Rather, she contends that at that time the business was a sole proprietorship and, therefore, she is a "Class 1 insured" under the policy. Emerson contends that she signed the application as an "owner" which should have notified the NIIC of her sole proprietorship. Thus, she maintains that there is no policy ambiguity regarding her Class 1 insured status. In the alternative, she argues that, even if there is an ambiguity,

-9-

she should prevail under New Mexico law because New Mexico law favors construction of the policy ambiguities in favor of the insured.

NIIC argues that it issued the policy to NRD as a corporation, that the corporation is the named insured, and that Emerson is not a party to the contract. NIIC also argues that the policy provisions provide a clear definition of a "Class 2" insured, and that Emerson is a Class 2 insured and is not entitled to stack. NIIC further argues that, under the policy language, a president, director, employee, and shareholder of the named insured is not entitled to stack. Emerson, as president and shareholder, falls under this definition and, as such, is not entitled to stack. NIIC contends that NRD was a corporation at all relevant times.

It is undisputed that the policy listed "Native Resource Development, Inc., 1612 South Second Street, Gallup, NM" as the name and address of the insured. It also described the form of business as a "corporation." (Ex.1). The kind of policy was described as "Commercial Auto Liability." (Id.). The business auto coverage form declarations described NRD's form of business as "corporation." (Pl.'s Ex. 9). The premium payments were paid in the name of NRD to NIIC. (Ex. 10). The insurance application described NRD as a corporation. (Ex. 3). There is no evidence in the record that Emerson ever disclosed NRD's sole proprietor status to NIIC.

Emerson argues that because she signed the policy as the "owner," NIIC should have been alerted that the business was a sole proprietorship and not a corporation and that, therefore, she is a Class 1 insured. The designation of "owner" itself is insufficient to

-10-

warrant a conclusion that Emerson is the sole proprietor of NRD and intended to hold herself out as a Class 1 insured. At best, it creates an ambiguity which warrants examination of extrinsic evidence surrounding the contract. The evidence fails to show Emerson's discussions with David Krzyzyanowski of Mueller & Associates or with NIIC, regarding her intent to make herself a Class 1 insured. Cf. Ponder, 2000-NMSC-033 ¶¶ 14-15, 129 N.M. 698, 12 P.3d 960 (holding that the insurance company cannot characterize the married daughter Class 2 insured where the insurer was alerted by the mother regarding her daughter's marriage and change of residence, and charged an additional premium to the mother, when mother expressly requested daughter's coverage). In fact, Emerson admitted that she never discussed the issue of stacking with Mueller & Associates. (Emerson Dep. at 181-182). Although Emerson argues that NIIC never inquired about NRD's corporate status, contrary to her arguments, the insurer is not obligated to investigate the corporate status of a named insured. See Howard v. Quality Xpress, Inc., 1999-NMSC-121 ¶¶ 11-12, 128 N.M. 79, 989 P.2d 896 (holding that the insurer had no duty to investigate application of carrier for commercial automobile coverage to determine if answers on carrier's application were correct).

Finally, although Emerson claims that she reasonably expected to be covered as a Class 1 insured, her actions reveal that she maintained, individually, a status separate from that of NRD, the corporation. For example, she filed her individual tax returns separately. (Emerson Dep. at 15). She filed separate tax returns for NRD during the years 2000 and 2001. (Ex. 5). She signed the tax returns as the President of NRD and not as sole owner or

joint owner. (Id.). The tax returns reflected Emerson as the officer of the corporation. (Ex. 5). An earlier insurance policy with Hartford also listed "Native Resource Development, Inc." as the named insured. (Ex. 3 to Plf.'s Supp. Response). Further, Emerson admitted that John Chapela formerly owned forty-nine percent of the business, but that she bought him out. (Emerson Dep. at 23-27). There are no documents to reflect this sale, and the 2001 tax returns list John Chapela as an officer of the corporation. (Ex. 5). This casts doubt on Emerson's claim that NRD is a sole proprietorship. As the third-party beneficiary, she has the burden to prove that she is an intended beneficiary. She failed to provide the evidence necessary to discharge that burden.

Emerson argues that there is an ambiguity in defining "Class 2 insured" because the policy defines "'employees', directors or shareholders" as Class 2 insureds, but fails to mention the word "officers." (Def. Mem. at 22). Read as a whole, however, the phrase "Class 2 insured" does not create an ambiguity because the policy defines it as "[a]nyone other than a Class 1 'insured' while 'occupying' a . . . [vehicle]," and further provides that: "Anyone other than a Class 1 'insured' includes your partners (if you are a partnership), or members (if you are a limited liability company), 'employees,' directors or shareholders." (Ex. 1; Pl. Ex. 6). The evidence in the record indicates that Emerson is a shareholder of NRD and an inference can be drawn therefrom that at the time of the accident she was an employee of NRD. See Fontana v. Zurich Ins. Co., 430 So.2d 718, 721 (La. Ct. App. 1983).

Further, the New Mexico policy endorsement defines a Class 1 insured as "you, if you are an individual. If you are an individual, your 'family member' is also a Class 1 'insured.'"

It defines Class 2 insured as "[y]ou if you are not an individual; . . . [a]nyone other than a Class 1 'insured' while 'occupying' a covered 'auto' . . . or members (if you are a limited liability company), 'employees', directors or shareholders." (Pl. Ex.6). The policy also limits the damages as follows: "The most we will pay for all damages sustained in such 'accident' by a Class 2 'insured' is that 'insured's' pro rata share of the limit shown in the Schedule or Declarations for this coverage, at the time of the 'accident.'" (Id.). "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations. The words 'we', 'us' and 'our' refer to the Company providing this insurance." (Ex. 1). The Arizona uninsured motorist coverage form defines the insured as "you, [and] . . . [i]f you are an individual, your 'family member.'" (Ex.6). Both New Mexico and Arizona forms clearly named "Native Resource Development Inc." as the named insured. (Ex. 6). The endorsement language makes it clear that NRD is the named insured. There is no mention of Penny Emerson in the policy. The policy language does not grant Emerson Class 1 insured status. There is no evidence to demonstrate that Emerson ever communicated with NIIC or Mueller & Associates regarding her intention to claim the benefits/advantages as a named insured.

Emerson argues that the public policy of New Mexico dictates stacking and, therefore, she should be allowed to stack. However, neither New Mexico case law nor public policy require stacking for Class 2 insureds. See Lopez, 98 N.M. at 172, 646 P.2d at 1236 (holding that Class 2 insured's coverage is limited to the coverage purchased on the vehicle in which

he was riding). As discussed earlier, Emerson failed to discharge her burden that she is a Class 1 insured. Penny Emerson is not a Class 1 insured.

Finally, in her supplemental memorandum, Emerson argues that NIIC's policy is ambiguous because NIIC's expert contradicted his own testimony, and opined that NRD was Class 1 at one time and Class 2 at a different time. This may create an ambiguity regarding NRD's status as Class 1 insured, but does not create an ambiguity regarding Emerson's status. Emerson moved for summary judgment, requesting that the Court declare her to be a Class 1 insured and the Court limits its ruling on that motion to this issue. The Court will not address, at this time, Emerson's argument raised for the first time in *Defendant/Counter Plaintiff's Supplemental Memorandum in Support of her Motion for Declaratory Judgment Regarding Stacking* (Doc. No. 194), that NRD is a Class 1 insured and, as such, is entitled to stack the coverage because it suffered property damage. See Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 196 (D.C. Cir. 1992) (declining to consider an argument discussed for the first time in a reply brief because it would be manifestly unfair to the appellee who has no opportunity for a written response). It is undisputed that NRD was reincorporated in June 2001. As a separate entity, NRD must move separately to secure relief. See Marchman v. NCNB Tex. Nat'l Bank, 120 N.M. 74, 81, 898 P.2d 709, 716 (1995) (holding that a stockholder of a corporation does not acquire standing to maintain an action in his own right as a shareholder when the alleged injury is inflicted upon the corporation).

### III.    CONCLUSION

For the foregoing reasons, the Court concludes, as a matter of law, that Penny Emerson is not entitled to stack the policies.

**IT IS, THEREFORE, ORDERED** that *Defendant/Counter Plaintiff's Motion for Declaratory Judgment Regarding Stacking* (Doc. No. 96) is **DENIED**.

**IT IS FURTHER ORDERED** that *Plaintiff/CounterDefendant National Interstate's Motion for Summary Judgment on Complaint for Declaratory Judgment and Counterclaim for Declaratory Judgment and Breach of Contract Concerning Commercial Insurance Policy's Uninsured Motorist Benefits* (Doc. No. 170) is **GRANTED IN PART** as follows: The insurance policy at issue provides only single, unstacked uninsured motorist benefits to Penny Emerson, which have been fully paid.

**SO ORDERED**, this 18th day of December 2003, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
*United States District Judge*