# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**NATIONAL INTERSTATE**
**INSURANCE COMPANY,**
an Ohio insurance company,

      Plaintiff/Counter-Defendant,

    vs.                        Civil No.    **01-1446 MCA/WDS**

**PENNY EMERSON**,
a New Mexico resident,

      Defendant/Counter-Plaintiff.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the following motions: *Plaintiff/Counter Defendant National Interstate's Motion for Summary Judgment on Alleged Respondeat Superior Liability of National Interstate for Conduct of Mueller & Associates* [Doc. No. 169], *Plaintiff/Counter Defendant National Interstate's Motion for Summary Judgment on Issue of Alleged Mistake, Fraud and Contract Reformation* [Doc. No. 168], *Plaintiff/Counter Defendant National Interstate's Motion for Summary Judgment Regarding Alleged Violations of the New Mexico Insurance Code and the Unfair Trade Practices Act* [Doc. No. 167], *Penny Emerson's Motion for Prejudgment Interest* [Doc. No. 161], *Defendant/Counter Plaintiff's Motion to Confirm Arbitration Award* [Doc. No. 90], and *Plaintiff/Counter Defendant National Interstate's Motion for*

*Summary Judgment on Complaint for Declaratory Judgment and Counterclaim for Declaratory Judgment and Breach of Contract Concerning Commercial Insurance Policy's Uninsured Motorist Benefits* [Doc. No. 170].  Having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, the Court issues the following rulings for the reasons set forth below:  Plaintiff/Counter Defendant National Interstate Insurance Company's (NIIC's) motion regarding *respondeat superior liability* is denied; NIIC's motion regarding alleged mistake, fraud, and contract reformation is granted in part and denied in part; NIIC's motion regarding alleged violations of the New Mexico Insurance Code and the Unfair Practices Act is granted in part and denied in part; NIIC's motion regarding the counterclaim for breach of contract concerning uninsured motorist (UM) benefits is granted in part; Ms. Emerson's motion for prejudgment interest is denied as moot; and Defendant/Counter Plaintiffs' motion to confirm the arbitration award is denied as moot.

## I.    <u>BACKGROUND</u>

Plaintiff/Counter Defendant National Interstate Insurance Company (NIIC) filed its *Complaint for Declaratory Judgment* [Doc. No. 1] on December 27, 2001. The *Complaint* asked the Court to declare that NIIC is required to provide uninsured motorist (UM) limits of no more than $100,000 per accident to Defendant/Counter-Plaintiff Penny Emerson, and that Ms. Emerson may not stack the UM limits for each covered auto under the commercial insurance policy that NIIC issued to Native Resource Development, Inc. (NRD).

Defendant/Counter Plaintiff Penny Emerson and Counter Plaintiff NRD filed an *Answer and Counterclaim* [Doc. No. 19] on May 1, 2002. In that pleading, Ms. Emerson and NRD assert counterclaims against NIIC for declaratory and injunctive relief, breach of contract, insurance bad faith and breach of fiduciary duties, violation of the New Mexico Insurance Code, violation of the New Mexico Unfair Practices Act, reformation of the insurance contract, and vicarious liability.

The parties have filed multiple, piecemeal motions for summary judgment, each addressing some, but not all, of the events and legal theories at issue in this case. Such piecemeal filings are not encouraged by this Court. While the parties' piecemeal filings are no model of clarity, it is possible to discern four basic sets of events around which the parties' legal theories and motions revolve. These four sets of events can be summarized as follows.

The first set of events concern NIIC's refusal to pay more than $100,000 on Ms. Emerson's claim for UM insurance arising from her motor-vehicle accident of August 11, 2001. This set of events gives rise to both NIIC's claim for declaratory judgment and the counterclaim for declaratory judgment filed by Ms. Emerson and NRD. This set of events also gives rise to a portion of their counterclaim for breach of contract, as well as the counterclaim for violation of Section 59A-16-20(G) of the New Mexico Insurance Code, N.M. Stat. Ann. § 59A-16-20(G) (Michie 1978 & Supp. 2000). NIIC has filed additional dispositive motions with respect to the breach of contract and Insurance Code theories advanced by Ms. Emerson and NRD in regard to this set of events. Ms. Emerson and NRD

have filed motions for prejudgment interest and confirmation of an arbitration award, which are premised on a favorable ruling regarding the counterclaims they have asserted with respect to NIIC's refusal to pay the full amount requested.

The Court has previously ruled on the parties' claims for declaratory judgment pertaining to this first set of events in the *Memorandum Opinion and Order* [Doc. No. 226] filed on December 18, 2003.  The factual summary and legal analysis contained in that *Memorandum Opinion and Order* are adopted herein for purposes of analyzing the additional dispositive motions which remain pending at this time.

Ms. Emerson and NRD also assert counterclaims regarding a second set of events that concern NIIC's sale of the insurance policy to NRD prior to Ms. Emerson's accident of August 11, 2001.  The legal theories which pertain to this set of events include those asserted in Ms. Emerson and NRD's counterclaims for contract reformation, vicarious liability, violation of certain provisions of the New Mexico Unfair Practices Act, and violation of certain provisions of the New Mexico Insurance Code.  NIIC has filed dispositive motions with respect to these particular legal theories as they pertain to the sale of the insurance policy.

The third set of events which give rise to a portion of Ms. Emerson and NRD's counterclaims concern NIIC's cancellation of NRD's insurance policy after Ms. Emerson's accident of August 11, 2001.  The portion of Ms. Emerson and NRD's counterclaim for breach of contract and violation of the New Mexico Insurance Code which pertains to the

cancellation of the insurance policy was previously addressed in the Court's *Memorandum Opinion and Order* [Doc. No. 231] filed on December 31, 2003.

Finally, Ms. Emerson and NRD assert counterclaims arising from a fourth set of events that concern NIIC's alleged delay in producing the $100,000 in UM benefits and $5,000 in medical-payment benefits that they eventually agreed to provide in response to Ms. Emerson's accident of August 11, 2001. Ms. Emerson and NIIC assert that this alleged delay supports a portion of their counterclaim for breach of contract and a portion of their counterclaim under the New Mexico Insurance Code. NIIC has filed a dispositive motion pertaining to the alleged Insurance Code violations arising from this set of events.

## II.   DISCUSSION

### A.   Standard of Review

Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element

of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying

a motion for summary judgment must be admissible or usable at trial (although they do not

necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324.

It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses,

or make factual findings in ruling on a motion for summary judgment.  Rather, the court

assumes the evidence of the non-moving party to be true, resolves all doubts against the

moving party, construes all evidence in the light most favorable to the non-moving party, and

draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526

U.S. 541, 551-52 (1999).

### B.    *Respondeat Superior* **Liability**

Paragraph 65 of the *Answer and Counterclaim* filed by Ms. Emerson and NRD asserts

that NIIC is liable under the doctrine of *respondeat superior* for the liability for acts and

failures to act, and omissions of any agent, employees, or independent contractors.  Under

the doctrine of *respondeat superior*, a principal is responsible for the acts of an agent when

the principal has clothed the agent with the appearance of authority.  See generally Romero

v. Mervyn's 109 N.M. 249, 253, 784 P.2d 992, 996 (1989); Vickers v. North American Land

Developments Inc., 94 N.M. 65, 67, 607 P.2d 603, 605 (1980); Restatement (Second) of

Agency, §§ 8, 27 comment a (1958).  In this case, Ms. Emerson and NRD contend that NIIC

is responsible for the conduct of Mueller & Associates.  Mueller & Associates is the firm that

acted as an intermediary between NIIC and Ms. Emerson with regard to the purchase of the insurance policy in question.

NIIC has filed a motion asserting that it is entitled to partial summary judgment holding as a matter of law that NIIC cannot be held liable for the conduct of Mueller & Associates under the doctrine of *respondeat superior*.  According to NIIC, Mueller & Associates merely acted as an insurance broker or producer with regard to the insurance transaction at issue in this case.  As such, NIIC contends that Mueller & Associates was an agent of the insured, not the insurer.

NIIC correctly cites the general principle of agency law that "an insurance broker represents the insured."  Barth v. Coleman, 118 N.M. 1, 7, 878 P.2d 319, 325 (1994).  The New Mexico Supreme Court has recognized exceptions to this general principle, however.  Under these exceptions, a broker has been held to represent the insurer in certain circumstances.  See id. at 7, 878 P.2d at 325 (collecting cases).  In light of these exceptions, "general agency principles are difficult to apply and often are erroneously applied in cases in which insurance is sold through intermediaries."  Id. (citing Robert E. Keeton & Alan I. Widiss, Insurance Law § 2.5(b), at 81 (1988)).  Accordingly, the Court is justifiably skeptical of NIIC's contention that, by means of a motion for summary judgment applying general principles of agency law, the conduct of Mueller & Associates can be categorically excluded as a basis for imposing liability on NIIC.

The evidence of record in this case indicates that Mueller & Associates acted as the intermediary with respect to virtually all communications between NIIC and Ms. Emerson

regarding the purchase of the insurance policy in question.   Ms. Emerson did not communicate directly with NIIC, and NIIC did not communicate directly with Ms. Emerson regarding this transaction.   While Mueller & Associates may have performed certain tasks on behalf of Ms. Emerson, such as presenting her application form to NIIC, there is also evidence that Mueller & Associates had a pre-existing relationship with NIIC and that NIIC may have directed Mueller & Associates to engage in certain communications with Ms. Emerson on its behalf.   Further, there is no evidence that either NIIC or Mueller & Associates ever explained the nature of their relationship with one another to Ms. Emerson during the relevant time frame.   When viewed in the light most favorable to Ms. Emerson and NRD, this evidence supports a reasonable inference that Mueller & Associates had apparent authority to act as NIIC's agent with respect to the sale of the insurance policy in question and the explanation of its terms and conditions.   Accordingly, NIIC's motion for summary judgment on this issue is denied.

While the Court will consider the conduct of Mueller & Associates in ruling on the other dispositive motions which remain pending at this time, the denial of NIIC's motion regarding the doctrine of *respondeat superior* does not necessarily mean that Ms. Emerson or NRD will prevail on any of their other counterclaims.   Under the doctrine of *respondeat superior*, the liability of the principal is derivative and secondary.   See Harrison v. Lucero, 86 N.M. 581, 584, 525 P.2d 941, 944 (Ct. App. 1974).   Thus, absent any wrongdoing of the principal other than through the agent, the exoneration of the agent removes the foundation on which to impute liability to the principal.   See id.   It follows that in order to establish

NIIC's liability for the acts of Mueller & Associates under the doctrine of *respondeat superior*, Ms. Emerson and NRD must first prove that Mueller & Associates engaged in some wrongful conduct that gives rise to a cause of action under the other theories articulated in their *Answer and Counterclaim*.  The Court next turns to the other theories articulated in the *Answer and Counterclaim* which are the subject of the dispositive motions that remain pending at this time.

### C.      Counterclaim for Contract Reformation

In their *Answer and Counterclaim*, Ms. Emerson and NRD assert that they are entitled to reformation of the insurance policy so as to provide additional UM benefits in response to Ms. Emerson's accident of August 11, 2001.  In support of this theory, they allege that there was a mutual mistake such that the insurance policy failed to express the intentions of the parties or, in the alternative, that there was a unilateral mistake by Ms. Emerson or NRD coupled with misrepresentation or other inequitable conduct by NIIC.

NIIC has moved for summary judgment with respect to Ms. Emerson and NRD's counterclaim for mistake, fraud, or contract reformation.  In its motion, NIIC asserts that Ms. Emerson and NRD have failed to come forward with evidence to support each element that is necessary to prevail on this counterclaim.

A claim for reformation of an insurance policy arises in an equitable proceeding as opposed to an action at law for breach of contract or violation of a statute.  See Buck v. Mountain States Investment Corp., 76 N.M. 261, 264, 414 P.2d 491, 493 (1966); Read v. Western Farm Bureau Mut. Ins. Co., 90 N.M. 369, 373, 563 P.2d 1162, 1166 (Ct. App.

1977).  Under equitable principles recognized by New Mexico courts, an instrument may be reformed if (1) there has been a mutual mistake, or (2) there has been a mistake by one party accompanied by fraud or other inequitable conduct by the other party.  See Chromo Mountain Ranch P'ship v. Gonzales, 101 N.M. 298, 299, 681 P.2d 724, 725 (1984).  The rule governing contract reformation based on a mutual mistake is stated as follows:

> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will by unfairly affected.

Restatement (Second) of Contracts § 155 (1981); accord State ex rel. State Highway & Transp. Dept. v. Garley, 111 N.M. 383, 388, 806 P.2d 32, 37 (1991).  The rule governing contract reformation based upon a unilateral mistake induced by misrepresentation provides that:

> If a party's manifestation of assent is induced by the other party's fraudulent misrepresentation as to the contents or effect of a writing evidencing or embodying in whole or in part an agreement, the court at the request of the recipient may reform the writing to express the terms of the agreement as asserted,
>
> (a) if the recipient was justified in relying on the misrepresentation, and
>
> (b) except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

Restatement (Second) of Contracts § 166 (1981); accord Chromo Mountain Ranch P'ship, 101 N.M. at 300, 681 P.2d at 726.

In addition to the rules governing contract reformation stated in Sections 155 and 166 of the Restatement, New Mexico courts have recognized "inequitable conduct" as a potential basis for reforming a contract even in the absence of an express finding of mutual mistake or fraud.  See Buck, 76 N.M. at 264-65, 414 P.2d at 494; Stock v. Adco General Corp., 96 N.M. 544, 549, 632 P.2d 1182, 1187 (Ct. App. 1981).  "It is not essential that the inequitable conduct be some serious wrongdoing."  Kimberly, Inc. v. Hays, 88 N.M. 140, 144, 537 P.2d 1402, 1406 (1975).  Thus, "[a]n agent's conduct need not be characterized as fraud in order to warrant reformation of an insurance policy."  Buck, 76 N.M. at 264, 414 P.2d at 494.  Reformation may be warranted where the mistake is induced by an agent's conduct that amounts to "a lack of good faith and fair dealing" or "negligence."  Id. at 265, 414 P.2d at 494.

In this case, the Court concludes that NIIC is entitled to summary judgment with respect to the contract-reformation theories based on mutual mistake (as stated in Section 155 of the Restatement) and misrepresentation (as stated in Section 166 of the Restatement).  The Court also concludes, however, that there are disputed issues of material fact which preclude summary judgment with respect to the contract-reformation theory based on other "inequitable conduct" as described in Buck, 76 N.M. at 264-65, 414 P.2d at 494.

### 1.    **Mutual Mistake**

The Court first addresses the theory of mutual mistake.  In support of this theory, Ms. Emerson and NRD assert that they requested and reasonably expected to have UM coverage greater than $100,000 for the type of accident in which Ms. Emerson was involved on

August 11, 2001.  To the extent that the written policy issued to NRD does not contain such coverage, Ms. Emerson and NRD assert that the absence of such coverage resulted from a mistake with regard to the distinction between Class 1 and Class 2 insureds, or the effect that such distinctions would have on Ms. Emerson's ability to stack the UM coverage under the policy.  In support of this assertion, Ms. Emerson claims that no one explained the meaning of Class 1 and Class 2 insureds to her at the time the policy was purchased and that she did not receive the written policy until six months later.

While Ms. Emerson may have been mistaken about the extent to which UM coverage could be stacked under the policy, the evidence of record does not support a reasonable inference that this mistake was mutual.  In this regard, NIIC has produced evidence that its employees who processed the insurance application, as well as those of Mueller & Associates, understood and intended the designation of the named insured, the definition of "Class 1 insured," and the policy limits on UM coverage to be as stated in the written policy. (Parks Dep. at 105; Hradek Dep. at 79-80; Krzyzanowski Dep. at 49, 111-115.)  Ms. Emerson and NRD have not come forward with evidence supporting a reasonable inference to the contrary.  Accordingly, NIIC is entitled to summary judgment on the counterclaim for contract reformation insofar as it is premised on a theory of  mutual mistake.

### 2.    Fraud/Misrepresentation

The Court next addresses the theory of contract reformation based on fraud or misrepresentation.  To support a counterclaim based on this theory, Ms. Emerson and NRD must come forward with evidence that such a mistake was induced by fraud or

misrepresentation on which they justifiably relied.  See Restatement (Second) of Contracts, supra, § 166.  To sustain an action based upon fraud, New Mexico law further requires that the following elements be proven:  (1) that a representation of fact was made which was not true; (2) that either the falsity of the representation was known to the party making it or the representation was recklessly made; and (3) that the representation was made with the intent to deceive and to induce the other party to rely on the representation; and (4) that the person upon whom the fraud was perpetrated did in fact rely on the representation.  NMUJI 13-1633 (2003); Eckhardt v. Charter Hosp. of Albuquerque, Inc., 1998-NMCA-017, ¶ 55, 124 N.M. 549, 953 P.2d 722.  Ms. Emerson and NRD cannot sustain an action based on fraud or misrepresentation in this case because they have not come forward with evidence that NIIC, through its employees or agents, represented or communicated to Ms. Emerson that the UM coverage amounts were anything different than what is stated in the written policy, i.e., $100,000 per New Mexico vehicle and $300,000 per Arizona vehicle, with NRD as the named insured, and the definition of "Class 1 insured" as previously described in the Court's Memorandum Opinion and Order [Doc. No. 226] filed on December 18, 2003.  Indeed, they concede in their response brief that their counterclaim for contract reformation is not based on allegations of fraud.  (Resp. Br. at 19.)  For these reasons, NIIC is entitled to summary judgment on this theory as well.

### 3.    Other Inequitable Conduct

This conclusion does not end the Court's inquiry because, as noted above, New Mexico courts have recognized a theory of contract reformation based upon other

"inequitable conduct" that does not amount to mutual mistake or fraud.  See Buck, 76 N.M. at 264-65, 414 P.2d at 494; Stock, 96 N.M. at 549, 632 P.2d at 1187.  In this regard, Ms. Emerson and NRD contend that NIIC and/or Mueller & Associates (acting as its agent) engaged in inequitable conduct by inserting language in the written policy that has a preclusive effect on Ms. Emerson's ability to stack the UM coverage and that was never explained or disclosed to Ms. Emerson at the time the policy was purchased or at the time the written policy was delivered.

In response to these contentions, NIIC points out the undisputed fact that, while Ms. Emerson initially requested more than $100,000 per vehicle in UM coverage, she was aware that the quantity and quality of coverage she requested from NIIC might not be the same as the coverage she negotiated and actually received through her communication with Mueller & Associates.  (Emerson Dep. at 165; Resp. Br. ¶ 10, at 4.)  NIIC also points out that, under New Mexico law, an application for insurance does not, in itself, effect a contractual relationship, and thus an insured generally has a duty to read and familiarize herself with the written policy rather than relying solely on her application or an agent's oral representations. See Western Farm Bureau Mut. Ins. Co. v. Barela, 79 N.M. 149, 151, 441 P.2d 47, 49 (1968); Porter v. Butte Farmers Mutual Ins. Co., 68 N.M. 175,179, 360 P.2d 372, 374-75 (1961).  According to NIIC, Ms. Emerson received a copy of the policy prior to the accident in question, and she did not question its terms or conditions or otherwise render any objections.  (Emerson Dep. at 229-234).

-14-

The Court concludes that the evidence does not support a theory of contract reformation based on a mistaken belief by Ms. Emerson that she had actually purchased the amount of UM coverage requested on her application form, *i.e.*, $1,000,000. Accordingly, NIIC is entitled to summary judgment on this particular theory.

The Court also concludes, however, that the evidence could support, by the thinnest of margins, a theory of contract reformation based on other inequitable conduct by NIIC or Mueller & Associates (acting as its agent) relating to a mistaken belief by Ms. Emerson that she would be entitled to stack the $100,000 per-vehicle UM coverage under the policy. In support of this theory, Ms. Emerson and NRD have presented evidence that they were seeking a commercial insurance policy involving a fleet of more than twenty vehicles with multiple drivers operating across jurisdictional boundaries, each with its own regulatory requirements. These facts suggest a sizable, complex transaction involving a real and considerable potential for risk. When viewed in the context of such a sizable and complex commercial transaction, evidence concerning the failure of NIIC or its agents to flag the stacking of UM coverage as an issue for further discussion or disclosure may take on greater legal significance.

The evidence further suggests that much of this transaction was negotiated over the telephone, with Mueller & Associates acting as an intermediary and filling out the paperwork. The written policy was not delivered to Ms. Emerson until well after the purchase had been completed and NRD had begun paying premiums. The evidence of record further indicates that during the negotiations regarding the purchase of the policy, neither

NIIC nor Mueller & Associates spoke with Ms. Emerson about the issue of stacking UM coverage, or how the ability to stack would be affected by the designation of NRD as the named insured and the policy's definition of a "Class 1 Insured."   A factfinder might reasonably infer from this evidence that the definition of a "Class 1 Insured" was inserted into the written policy at a later date, and that Ms. Emerson may have been mistaken as to the legal consequences of this definition when she entered into the contract naming NRD as the named insured.

While the delivery of the written policy may have provided Ms. Emerson with both an opportunity and a duty to correct this mistake prior to the accident, in at least some instances New Mexico courts have allowed an equitable claim for contract reformation to proceed in spite of such a duty or opportunity.  See, e.g., Read, 90 N.M. at 374, 563 P.2d at 1167.  Given the apparently wide latitude that New Mexico courts have provided for pursuing contract-reformation claims based on "inequitable conduct," the Court cannot conclude that NIIC is entitled to judgment as a matter of law with respect to this particular theory.[1]  When viewed in the light most favorable to Ms. Emerson and NRD, evidence concerning the sizable and complex nature of the transaction, combined with evidence concerning the circumstances under which the policy was negotiated and purchased, could support a counterclaim for reformation based on a theory of inequitable conduct.  Therefore,

---

[1]The Court's ruling on this equitable issue does not change its conclusions with respect to any other counterclaims relating to the interpretation of the contract or the sale of the policy, as the applicable law does not provide Ms. Emerson or NRD with the same degree of latitude regarding their other counterclaims.

NIIC's motion for summary judgment on this counterclaim is denied in part insofar as it is based on evidence of other "inequitable conduct" recognized under New Mexico law as it relates to a mistaken belief by Ms. Emerson that she would be entitled to stack the $100,000 per-vehicle UM coverage under the policy.

### D.    Counterclaim Regarding the New Mexico Unfair Practices Act

In Paragraph 56 of their *Answer and Counterclaim*, Ms. Emerson and NRD assert that NIIC's conduct "violates Section 57-12-1 *et seq*. NMRA 1978, including 57-12-2 (A) (D) (5) (7) (14) (17) (E) (1)."   This assertion apparently refers to certain provisions of the New Mexico Unfair Practices Act codified at N.M. Stat. Ann. §§ 57-12-1 to 57-12-22 (Michie 1978 & Supp. 2000).

NIIC has filed a motion for summary judgment [Doc. No. 167] asserting that it did not violate any provisions of the New Mexico Unfair Practices Act.[2]  Specifically, NIIC's motion addresses Section 57-12-2(D) of the Unfair Practices Act, which defines an "unfair or deceptive trade practice" as

> any false or misleading oral or written statement, visual description, or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person.

---

[2]NIIC's motion refers to the Unfair Practices Act as the Unfair Claims Practices Act.  It is clear from the statutory citations provided in the motion, however, that the pertinent portion of NIIC's brief refers to the Unfair Practices Act codified at N.M. Stat. Ann. §§ 57-12-1 to 57-12-22.

N.M. Stat. Ann. § 57-12-2(D) (prior to 2003 amendment).  According to NIIC's motion, Ms. Emerson and NRD have not met their burden of proving that any false, misleading, or otherwise deceptive statement regarding the sale of a commercial insurance policy was "knowingly made" by NIIC or its agents.

"A party claiming a violation of the Unfair Practices Act must rely on one or more of the specific violations enumerated in the act," and "when the trial court is going to rule and deny relief," the party claiming a violation must "present that specific violation to the trial court."  State Farm Fire & Cas. Co. v. Price, 101 N.M. 438, 447, 684 P.2d 524, 533 (Ct. App. 1984), overruled on other grounds, Ellingwood v. N.N. Investors Life Ins. Co., 111 N.M. 301, 805 P.2d 70 (1991).  The response brief filed by Ms. Emerson and NRD in opposition to NIID's summary-judgment motion on this issue does not present evidence or argument regarding any specific provisions of the Unfair Practices Act other than Sections 57-12-2(D)(17) and 57-12-2(E).  (Resp. Br. at 10-11.)  Accordingly, NIIC is entitled to summary judgment with respect to all other sections of the Unfair Practices Act, and the Court limits its analysis to Sections 57-12-2(D)(17) and 57-12-2(E).  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671-72 (10th Cir. 1998) (explaining non-movant's burden in responding to motion for summary judgment).

Section 57-12-2(D)(17) of the Unfair Practices Act further defines an "unfair or deceptive trade practice" to include a "failure to deliver the quality or quantity of goods or services contracted for."  N.M. Stat. Ann. § 57-12-2(D)(17).  According to Ms. Emerson and NRD, NIIC violated this provision of the statute by refusing to pay more than $100,000 in

UM benefits in response to Ms. Emerson's claim arising from the accident of August 11, 2001.

This counterclaim under Section 57-2-12(D)(17) of the statute fails because the Court already has determined as a matter of law that the contract in question did not provide for more than $100,000 in UM benefits with respect to Ms. Emerson's accident of August 11, 2001. [Doc. No. 226.] The evidence of record indicates that NIIC already provided Ms. Emerson with the $100,000 in UM benefits which were available under the policy in relation to that accident. Thus, there is no evidence of a failure to deliver the goods or services which the parties contracted for.

Further, a failure to deliver goods or services cannot violate Section 57-2-12(D)(17) absent some evidence of misrepresentation, falsity, or deception that is knowingly made. See Stevenson v. Louis Dreyfus Corp., 112 N.M. 97, 99-100, 811 P.2d 1308, 1310-11 (1991). A finding that the terms of a contract are complex, or that the paperwork involved in the formation of that contract was filled out in a sloppy manner, does not necessarily imply that a party to the contract knowingly made false statements, engaged in misrepresentation, or was deceptive. To hold otherwise would effectively convert almost every breach of contract claim involving interpretation of complex contract language into a claim under the Unfair Practices Act. The New Mexico Supreme Court has opined that the Legislature did not intend such a result in enacting this statute. See Stevenson, 112 N.M. at 99-100, 811 P.2d at 1310-11. For these reasons, NIIC is entitled to summary judgment on the counterclaim of Ms. Emerson and NRD under Section 57-12-2(D)(17) of the Unfair Practices Act.

Ms. Emerson and NRD also contend that the communications of NIIC or its agents regarding the sale of the insurance policy constituted an "unconscionable trade practice" under Section 57-12-2(E) of the Unfair Practices Act because they took advantage of Ms. Emerson's lack of knowledge of the stacking issue or the consequences of purchasing a policy in the name of a corporation rather than a sole proprietorship.   Section 57-12-2(E) of the statute defines an "unconscionable trade practice" as:

> any act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:
>
> (1)  takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or
>
> (2)  results in a gross disparity between the value received by a person and the price paid.

N.M. Stat. Ann. § 57-12-2(E) (prior to 2003 amendment).

Even when viewed in the light most favorable to Ms. Emerson and NRD, the evidence of record does not satisfy each of the essential elements needed to establish an unconscionable trade practice under this statute.   While Ms. Emerson initially requested more than $100,000 per vehicle in UM coverage, she was aware that the quantity and quality of coverage she requested from NIIC might not be the same as the coverage she negotiated and actually received through her communication with Mueller & Associates.  (Emerson Dep. at 165; Resp. Br. ¶ 10, at 4.)  Accordingly, she cannot premise her counterclaim for

unconscionable trade practices on an expectation that she would receive the same amount of coverage that was requested on her application form.

Similarly, while the fact that Ms. Emerson had the opportunity to read the written policy may not be dispositive with respect to her equitable counterclaim for contract reformation, <u>see</u> Section II.C.3, <u>supra</u>, it is undisputed that a copy of the written policy was delivered to her for her review well before the accident. She points to no evidence indicating any attempt by NIIC or its agents to hide information about the policy's language or its legal consequences from her. For these reasons, the evidence of record does not support a reasonable inference that NIIC or its agents took advantage of her lack of knowledge of the stacking issue to a degree that is so grossly unfair as to support a cause of action under Section 57-12-2(E) of the Unfair Practices Act.

Further, one cannot reasonably infer that the transaction was unconscionable simply because, with the benefit of 20/20 hindsight, it would have more advantageous for Ms. Emerson to have designated herself (in the capacity of a sole proprietor) as the named insured on the policy for the purpose of increasing recovery on a claim for UM benefits. Similarly, the fact that her designation of NRD as the named insured turned out to be more advantageous for NIIC with respect to this particular claim does not render the transaction unconscionable.

To determine unconscionability in this context, the factfinder must evaluate the premiums paid by the insured, and the coverage it received, in relation to the full range of risks and potential claims that were reasonably foreseeable at the time the policy was

purchased or delivered.  Ms. Emerson and NRD have not come forward with any evidence to show that the designation of NRD as the named insured was grossly more advantageous to NIIC under all coverage scenarios that were reasonably foreseeable at the time of the purchase or delivery of the policy.

The evidence of record in this case simply does not support a reasonable inference that NIIC or Mueller & Associates somehow manipulated the contract negotiations or claims process in order to increase the premiums to an amount that is grossly disproportionate with the coverage or benefits available under the policy.  For these reasons, NIIC is entitled to summary judgment on Ms. Emerson and NRD's counterclaim for unconscionable trade practices under Section 57-12-2(E) of the Unfair Practices Act.

### E.    Violation of the New Mexico Insurance Code

In Paragraph 50 of their *Answer and Counterclaim* [Doc. No. 19], Ms. Emerson and NRD assert that NIIC "at all material times has failed to abide by their [sic] statutory duties as set forth in Section 59A-16-1 *et seq.* NMRA (1978), including 59A-16-4(A) (G), 59A-16-20(A) (B) (C) (D) (E) (G) (H) (N)."  This assertion apparently refers to certain provisions of the New Mexico Insurance Code contained in N.M. Stat. Ann. ch. 59A (Michie 1978 & Supp. 2000).

NIIC has filed a motion for summary judgment [Doc. No. 167] asserting that it did not violate any provisions of the New Mexico Insurance Code.  Specifically, NIIC's motion addresses the practices described in Sections 59A-16-20(B), (C), (D), (E), and (G) of the Insurance Code and argues that Ms. Emerson and NRD have not met their burden of

presenting evidence to support each essential element of a claim under these provisions of the Insurance Code.  NIIC further asserts that a common element of any claim under Section 59A-16-20 is that the practice in question was "knowingly committed or performed with such frequency as to indicate a general practice."  Id. § 59A-16-20.  According to NIIC, there is no evidence of record to support this essential element of Ms. Emerson and NRD's counterclaims under this section of the Insurance Code.

In response to NIIC's motion, Ms. Emerson and NRD contend that there are genuine issues of material fact which preclude summary judgment with respect to Sections 59A-16-20(A), (C), (E), and (G) and Sections 59A-16-4(A) of the Insurance Code, N.M. Stat. Ann. §§ 59A-16-20(A), (C), (G); id. § 59A-16-4(A).  More specifically, Ms. Emerson and NRD contend that NIIC made (or is vicariously liable for) misrepresentations during the sale of the insurance policy to NRD, and that such misrepresentations violate Sections 59A-16-4(A) and 59A-16-20(A) of the Insurance Code.  Ms. Emerson and NRD further contend that NIIC was untimely in processing and settling Ms. Emerson's claim arising from her accident of August 11, 2001, in violation of Sections 59A-16-20(C) and (E) of the Insurance Code, and that by failing to promptly pay the full amount claimed by Ms. Emerson, NIIC compelled her to institute this litigation in violation of Sections 59A-16-20(G) of the Insurance Code.

The Court determines that there are disputed issues of material fact concerning the alleged violations of Sections 59A-16-20(C) and (E) of the Insurance Code, which relate to the timeliness of NIIC's processing and payment of the $100,000 in UM benefits and $5,000 in medical-payment benefits in response to Ms. Emerson's claim arising from the accident

-23-

of August 11, 2001.  As indicated in the Court's *Memorandum Opinon and Order* filed on December 31, 2003, there are also disputed issues of material fact relating to the counterclaim for an Insurance Code violation arising from the cancellation of the policy. Therefore, NIIC's summary-judgment motion is denied in part with respect to these two issues.

The Court reaches a different conclusion regarding the alleged violations of Sections 59A-16-4(A) and 59A-16-20(A), which concern misrepresentations regarding "the benefits, advantages, conditions or terms of any policy," N.M. Stat. Ann. § 59A-16-4(A), or other "pertinent facts or policy provisions relating to coverages at issue," id. § 59A-16-20(A).  As indicated in the Court's prior analysis of the other counterclaims which revolve around Ms. Emerson's purchase of the policy, the evidence of record in this case does not support a reasonable inference that NIIC or Mueller & Associates' communications with Ms. Emerson amounted to a misrepresentation with regard to the amount of UM coverage that the policy provided for each New Mexico vehicle or accident, whether the named insured was or should be a corporation or a sole proprietor, or whether Ms. Emerson was a Class 1 Insured entitled to stacking of UM coverage under the policy.  The law does not equate contractual complexity with a knowing misrepresentation.  For these reasons, the Court grants summary judgment in NIIC's favor with respect to the counterclaims of Ms. Emerson and NRD under Sections 59A-16-4(A) and 59A-16-20(A) of the Insurance Code.

The Court also grants summary judgment in NIIC's favor with respect to the counterclaim under Section 59A-16-20(G) of the Insurance Code, which prohibits insurers

from "compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered."  N.M. Stat. Ann. § 59A-16-20(G).  A claim by Ms. Emerson or NRD that they were wrongfully compelled to institute litigation to determine the amount of UM coverage is not viable at this point because NIIC has prevailed in the litigation with respect to the UM coverage issue, as stated in the Court's prior rulings.  [Doc. No. 226.]

In their response brief, Ms. Emerson and NRD did not address any counterclaims under any other provisions of the Insurance Code (including, but not limited to, the provisions in Sections 59A-16-4(G) and 59A-16-20(B), (D), (H), (N)).  Thus, Ms. Emerson and NRD are not in a position to defeat summary judgment in NIIC's favor with respect to any counterclaims under these provisions of the Insurance Code.  See Adler, 144 F.3d at 671-72 (explaining non-movant's burden in responding to motion for summary judgment).  To the extent they are not addressed in the Court's prior rulings on other motions, NIIC's motion for summary judgment is granted in part with respect to such provisions, because Ms. Emerson and NRD have not come forward with evidence to support each essential element of a claim under them.

### F.    Counterclaim for Breach of Contract Concerning UM Benefits

In the *Memorandum Opinion and Order* [Doc. No. 226] filed on December 18, 2003, the Court ruled on the parties' cross-motions regarding their claims for declaratory judgment on the stacking issue and determined as a matter of law that the policy did not require NIIC

to pay more than $100,000 in UM benefits for Ms. Emerson's accident of August 11, 2001.

NIIC's motion regarding the stacking issue also addressed the portion of Ms. Emerson's

counterclaim for breach of contract which revolves around NIIC's refusal to pay more than

this amount. It follows from the Court's prior ruling on the declaratory-judgment claims that

NIIC also is entitled to summary judgment on that portion of Ms. Emerson and NRD's

counterclaim for breach of contract. Therefore, NIIC's motion is granted in part with respect

to this aspect of the breach of contract counterclaim as well.

### G.    Prejudgment Interest

It follows from the Court's prior rulings that neither Ms. Emerson nor NRD are

entitled to pre-judgment interest with respect to their counterclaims arising from NIIC's

refusal to pay more than $100,000 in UM benefits for Ms. Emerson's accident of August 11,

2001. Therefore, the motion for prejudgment interest filed by Ms. Emerson and NRD is

denied as moot.

### H.    Confirmation of Arbitration Award

Although an arbitration panel previously determined that Ms. Emerson's accident of

August 11, 2001, resulted in compensatory damages of $1.8 million, the arbitration panel did

not determine whether or to what extent that amount was covered under NRD's commercial

insurance policy with NIIC. Rather, the insurance coverage issue was decided by this Court

in response to the parties' cross-motions on their claims for declaratory judgment. Having

previously determined that Ms. Emerson is not entitled to stack the UM coverage under

NRD's commercial insurance policy with NIIC, it follows that Ms. Emerson is not entitled

to confirmation of an arbitration award that is greater than the $100,000 in unstacked UM benefits already provided under that policy.   Therefore, Ms. Emerson's motion for confirmation of the arbitration award is denied as moot.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that there are genuine issues of material fact which preclude summary judgment with respect to the application of the doctrine of *respondeat superior* to the conduct of Mueller & Associates and the application of those provisions of the New Mexico Insurance Code which pertain to the cancellation of the insurance policy and the delay in processing the claim for $100,000 in UM benefits and $5,000 in medical-payment benefits.   Additionally, NIIC is entitled to summary judgment as a matter of law with respect to the counterclaims of Ms. Emerson and NRD under all other provisions of the New Mexico Insurance Code, the counterclaims under the New Mexico Unfair Practices Act, and those portions of the counterclaim for breach of contract that relate to NIIC's refusal to pay more than $100,000 in UM benefits in response to the claim arising from Ms. Emerson's accident of August 11, 2001.   The Court further concludes that NIIC is entitled to summary judgment with respect to the counterclaim for contract reformation based on theories of mutual mistake and fraud or misrepresentation, but not with respect to the theory of unilateral mistake induced by other inequitable conduct.   In light of these rulings and the Court's prior rulings, Ms. Emerson's motion for prejudgment interest and the motion to confirm the arbitration award are denied as moot.

**IT IS, THEREFORE, ORDERED** that *Plaintiff/Counter Defendant National Interstate's Motion for Summary Judgment on Alleged Respondeat Superior Liability of National Interstate for Conduct of Mueller & Associates* [Doc. No. 169] is **DENIED**.

**IT IS FURTHER ORDERED** that *Plaintiff/Counter Defendant National Interstate's Motion for Summary Judgment on Issue of Alleged Mistake, Fraud and Contract Reformation* [Doc. No. 168] is **GRANTED IN PART** and **DENIED IN PART** as specified above.

**IT IS FURTHER ORDERED** that *Plaintiff/Counter Defendant National Interstate's Motion for Summary Judgment Regarding Alleged Violations of the New Mexico Insurance Code and the Unfair Trade Practices Act* [Doc. No. 167] is **GRANTED IN PART** and **DENIED IN PART** as specified above.

**IT IS FURTHER ORDERED** that *Plaintiff/CounterDefendant National Interstate's Motion for Summary Judgment on Complaint for Declaratory Judgment and Counterclaim for Declaratory Judgment and Breach of Contract Concerning Commercial Insurance Policy's Uninsured Motorist Benefits* [Doc. No. 170] is **GRANTED IN PART** with respect to the counterclaim for breach of contract concerning NIIC's refusal to pay more than $100,000 in UM benefits under the insurance policy.

**IT IS FURTHER ORDERED** that *Penny Emerson's Motion for Prejudgment Interest* [Doc. No. 161] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that *Defendant/Counter Plaintiff's Motion to Confirm Arbitration Award* [Doc. No. 90] is **DENIED AS MOOT**.

**SO ORDERED**, this 6th day of January, 2004, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
*United States District Judge*