IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**NATIONAL INTERSTATE**
**INSURANCE COMPANY,**
an Ohio insurance company,

      Plaintiff/Counter-Defendant,

  vs.                                Civil No.    **01-1446 MCA/WDS**

**PENNY EMERSON**,
a New Mexico resident,

      Defendant/Counter-Plaintiff.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the trial briefs [Doc. No. 246, 248] filed by the parties on January 16, 2004, and National Interstate Insurance Company's (NIIC's) ***Motion in Limine to Exclude Proposed Testimony and Evidence*** [Doc. No. 239] filed on January 12, 2004. Having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, the Court clarifies its prior rulings and issues the following additional rulings for the reasons set forth below: (1) NIIC is entitled to judgment as a matter of law on Native Resource Development, Inc.'s (NRD's) counterclaim for stacking of uninsured motorist (UM) benefits; (2) NIIC is entitled to judgment as a matter of law on Ms. Emerson and NRD's counterclaims for breach of contract, insurance bad faith, and violations of New Mexico's Insurance Code and Unfair Practices Act arising from

NIIC's refusal to pay, offer, or sell more than $100,000 in UM benefits; (3) there is no right to a jury trial on the counterclaim for equitable reformation of the insurance contract, and that counterclaim will be tried to the Court; (4) the only counterclaims which remain pending for trial before a jury are those pertaining to the cancellation of the policy and the alleged delay in payment of the undisputed $100,000 in uninsured motorist (UM) benefits and $5,000 in medical-payments benefits; and (5) evidence which is relevant only to issues resolved in NIIC's favor by virtue of this *Memorandum Opinion and Order* and the Court's prior rulings on dispositive motions will be excluded from the jury trial.

**I.    BACKGROUND**

The facts and procedural history relating to this action are summarized in prior *Memorandum Opinions and Orders* [Doc. No. 232, 231, 226] filed on January 6, 2004; December 31, 2003, and December 18, 2003.  On January 7, 2004, the Court sent a letter to counsel instructing them to submit trial briefs that identify with specificity each legal theory which they contend remains viable as an issue for trial in light of the Court's prior rulings and the state of the pleadings.  With reference to each legal theory so identified, the Court further directed the parties to provide citations to the relevant legal authorities, relevant pleadings and orders of the court, and anticipated evidence upon which they rely to support their contentions.

The parties' trial briefs submitted in response to the Court's letter of January 7, 2004, are in basic agreement that the following counterclaims remain pending for trial:  (1) reformation of the insurance contract, and (2) insurance bad faith and violation of N.M. Stat.

Ann. §§ 59A-16-20(C) and (E) relating to the cancellation of the insurance policy and the delay in payment of the undisputed $100,000 in UM benefits and $5,000 in medical-payment benefits. NIIC asserts, however, that the counterclaims relating to cancellation of the insurance policy do not encompass the issues of whether the notice of cancellation was made in accordance with N.M. Stat. Ann. § 59A-18-29, and whether certain insurance premiums were properly refunded.

In their trial briefs, the parties dispute whether Ms. Emerson and NRD retain any viable counterclaims relating to the sale of the policy other than the reformation counterclaim noted above. Ms. Emerson and NRD assert that they still have a viable claim for insurance bad faith relating to the sale of the policy, as well as various statutory claims under New Mexico's Insurance Code and Unfair Practices Act. NIIC denies these contentions.

The parties also dispute whether any of Ms. Emerson or NRD's counterclaims relating to NIIC's refusal to pay more than $100,000 in UM benefits under the policy remain viable. Ms. Emerson and NRD assert that such counterclaims remain viable under the theory that NRD was a "Class 1 Insured" entitled to stack UM coverage under the policy, and under the theory that the UM coverage must equal the amount of liability coverage stated in the policy due to NIIC's alleged failure to comply with N.M. Stat. Ann. § 66-5-301(A) when offering UM insurance coverage to Ms. Emerson or NRD. NIIC denies these assertions and has moved to exclude evidence that is not relevant to the set of counterclaims which remain pending for trial.

## II. DISCUSSION

As acknowledged in Ms. Emerson and NRD's trial brief [Doc. No. 246, at 12 n.4], the Court retains the authority to revise or clarify its opinions granting or denying partial summary judgment prior to the issuance of a final judgment. See FDIC v. Massingill, 24 F.3d 768, 774 (5th Cir. 1994); 11 James Wm. Moore et al., Moore's Federal Practice § 56.40[2], at 56-281 (3d ed. 2003). The parties' trial briefs and the briefing on NIIC's motion in limine indicate that some of the Court's prior rulings may have been misconstrued in certain respects. Thus, the Court determines that the following clarifications and additional analysis are necessary.

### A. Bifurcation of Trial

On January 20, 2004, the Court sent a letter to counsel informing them that there is no right to a jury trial on Ms. Emerson and NRD's counterclaim for reformation of the insurance contract. See Enserch Corp. v. Shand Morahan & Co., 952 F.2d 1485, 1502 (5th Cir. 1992); Am. Cas. Co. v. Glaskin, 805 F. Supp. 866, 872-73 (D. Colo. 1992); Weinisch v. Sawyer, 587 A.2d 615, 620 (N.J. 1991); 8 James Wm. Moore et al., Moore's Federal Practice § 38.31[7], at 38-94 to 38-95 (3d ed. 2003). Accordingly, the counterclaim for reformation of the insurance contract will be resolved by means of a bench trial, and, to the extent that it does not involve common factual issues, the bench trial on the reformation counterclaim will be bifurcated from the other counterclaims that are tried before a jury. See generally Ag Servs. of Am., Inc. v. Nielsen, 231 F.3d 726, 730 (10th Cir. 2000).

**B.     <u>Whether NRD is a "Class 1 Insured"</u>**

In their trial brief, Ms. Emerson and NRD assert that NRD still has a viable counterclaim against NIIC on the issue of stacking because the Court did not expressly rule on an alternative theory raised for the first time in Ms. Emerson's supplemental memorandum.[1] [Doc. No. 194, 226.] In that supplemental memorandum [Doc. No. 194], Ms. Emerson asserted that certain excerpts from the deposition testimony of two of NIIC's experts raised an ambiguity as to whether NRD was defined as a "Class 1 Insured" under the policy and, as such, would be entitled to stack the UM coverage.

The Court determines that NIIC is entitled to judgment as a matter of law on this counterclaim. The contractual language is not ambiguous, and NRD is not a "Class 1 Insured" entitled to stack New Mexico UM coverage under the policy. As noted in the Court's prior *Memorandum Opinion and Order* [Doc. No. 226], the first page of the "Business Auto Coverage Form" defines "you" as "the Named Insured shown in the Declarations." The Declarations page lists "Native Resource Development, Inc." as the "Named Insured." The Declarations page also contains a section in which the "Form of Business" can be designated as a corporation, partnership, individual, or "Other." NRD is designated as a "corporation" (and not an "individual") in this section of the Declarations

---

[1] While the Court was not required to address this issue when raised for the first time in a supplemental memorandum, Ms. Emerson and NRD cannot claim that they lacked notice that the Court would dispose of it by means of summary judgment. Counsel for Ms. Emerson and NRD were afforded the opportunity to brief the issue in the cross-motions for summary judgment on stacking as well as in their trial brief.

page. The New Mexico policy endorsement defines "Class 1 Insured" as "you, if you are an individual. If you are an individual, your 'family member' is also a Class 1 'insured.'" "Class 2 insured" is defined as "[y]ou if you are not an individual: and [a]nyone other than a Class 1 'insured' while 'occupying' a covered 'auto,'" including "your partners (if you are a partnership), or members (if you are a limited liability company), 'employees', directors or shareholders." [Ex. 1 to NIIC's Compl.]

It follows that NRD is a "Class 2 Insured," and not a "Class 1 Insured," because the Declarations page lists NRD as a corporation, and a corporation is not an "individual" or a "family member." As a "Class 2 Insured," NRD is not entitled to stack the New Mexico UM coverage under the policy.

The language of the policy is clear on this point. Thus, there is no need to resort to extrinsic evidence or expert opinion to construe or interpret its meaning. See Richardson v. Farmers Ins. Co. of Ariz., 112 N.M. 73, 74, 811 P.2d 571, 572 (1991) ("Absent ambiguity, provisions of [a] contract need only be applied, rather than construed or interpreted."). Accordingly, the excerpts of deposition testimony provided in Ms. Emerson' supplemental memorandum [Doc. No. 194] (which are flatly contradicted in subsequent corrections) do not give rise to a genuine issue of material fact as to whether NRD is a "Class 1 Insured." NIIC is entitled to judgment as a matter of law on this counterclaim.

    **C.**    **The Significance of N.M. Stat. Ann. § 66-5-301(A)**

N.M. Stat. Ann. § 66-5-301(A) provides that:

> No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

In this case, the insurance policy in question provided Ms. Emerson and NRD with more than the statutory "minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215" but less than the "the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy."

Ms. Emerson and NRD allege that NIIC violated Section 66-5-301(A) because the company or its agent did not offer to sell NRD UM coverage in an amount equal to "the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy." According to Ms. Emerson and NRD, the remedy for this alleged violation is to read the language of the statute into the terms of the policy such that the amount of UM coverage equals the amount of liability coverage.

With respect to Ms. Emerson and NRD's counterclaims against NIIC, the Court determines that this remedy is properly sought under a theory of contract reformation only. In determining the significance of Section 66-5-301(A) in relation to the facts alleged here, the Court must first "define the cause of action," Glaskin, 805 F. Supp. at 872, with emphasis on the nature of "the relief requested," Weinisch, 587 A.2d at 618. No matter how described, Ms. Emerson and NRD's counterclaim invoking Section 66-5-301(A) amounts to a request that the Court reform the insurance contract to provide more UM coverage than is actually stated in the express language of the written policy. When asserted against an insurer based on an alleged agency relationship with the firm that sold the insurance, such a counterclaim is appropriately defined as one for reformation of the insurance contract. See Weinisch, 587 A.2d at 618-19; Glaskin, 805 F. Supp. at 872. "A judgment ordering greater coverage than that contained in the policy is inescapably one for reformation. Calling such relief anything other than reformation is merely wordplay." Weinisch, 587 A.2d at 619.

It follows that Ms. Emerson and NRD are not entitled to such a remedy against NIIC or its agent under a separate counterclaim seeking damages for breach of contract, insurance bad faith, or negligence. To the extent that such theories derive from, or rely upon, interpretation of the insurance contract, they already have been addressed in the Court's prior rulings [Doc. No. 226, 232] filed on January 6, 2004, and December 18, 2003, wherein the Court determined that the language of the policy is not ambiguous and does not provide for stacking of UM benefits in this instance. The Court's rulings on these theories are distinct

from, and do not preclude, an equitable theory of reformation. See Glaskin, 805 F. Supp. at 873.

In the motions for summary judgment which are the subject of the Court's prior rulings, NIIC sought judgment as a matter of law with respect to the counterclaim for "bad faith breach of contract" [Doc. No. 170, at 26], as well as all alleged violations of the Insurance Code and the Unfair Practices Act [Doc. No. 167, at 8 (subheading "A") and 13 (subheading "B")]. Having failed to come forward with evidence to defeat NIIC's motions for summary judgment on these issues, there is no merit to Ms. Emerson and NRD's assertion that these counterclaims remain viable for trial. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671-72 (10th Cir. 1998) (explaining non-movant's burden in responding to motion for summary judgment and consequences of failure to meet that burden).

For these reasons, the arguments advanced by Ms. Emerson and NRD with respect to Section 66-5-301(A) will be considered in the context of their counterclaim for reformation of the contract, but do not provide a basis for avoiding summary judgment on issues relating to interpretation of the contract or alleged violations of New Mexico's Insurance Code and Unfair Practices Act. NIIC is entitled to judgment as a matter of law with respect to the counterclaims for breach of contract, insurance bad faith, and violations of the Insurance Code and the Unfair Practices Act arising from NIIC's refusal to pay, offer, or sell more than $100,000 in UM benefits.

**D.     Other Issues**

Ms. Emerson and NRD's trial brief also attempts to resuscitate some of their counterclaims relating to the sale of the policy or the refusal to pay more than $100,000 in UM benefits by invoking various theories (such as reasonable expectations, judicial stacking, and breach of fiduciary duties) which they claim were not previously addressed by the Court. Ms. Emerson and NRD also have submitted jury instructions on other theories (such as negligence) which were not alleged as a separate count in their *Answer and Counterclaim*. Assuming for purposes of analysis that they were properly pled in the *Answer and Counterclaim* or the *Pretrial Order*, counterclaims against NIIC and its agent based on these additional theories are no longer viable in light of the Court's prior rulings.

To the extent that Ms. Emerson and NRD's counterclaims assert that the insurance policy is ambiguous and must be interpreted to provide stacking or additional UM coverage for Ms. Emerson's accident of August 11, 2001, the Court already has ruled in NIIC's favor on those counterclaims. In particular, the Court already has determined that "provisions of [a] contract need only be applied, rather than construed or interpreted" when there is no ambiguity. Richardson, 112 N.M. at 74, 811 P.2d at 572. There being no ambiguity in the relevant contractual provisions in this case, there is no basis for resorting to the additional doctrines to which Ms. Emerson and NRD refer in their trial brief.

To the extent that Ms. Emerson or NRD's counterclaims against NIIC and its agent seek greater UM coverage than that contained in the policy, the Court already has ruled that such counterclaims fall exclusively within a cause of action for equitable reformation of the

insurance contract. Their attempt to characterize such relief as "anything other than reformation is merely wordplay." Weinisch, 587 A.2d at 619. In particular, this type of relief does not give rise to a separate cause of action for the tort of negligence when it is sought from NIIC and its agent. "[W]hen the policy contains inadequate coverage because of the negligence of the insurer's agent, the insurer itself can be held responsible and the reformation is the appropriate remedy." Weinisch, 587 A.2d at 618; cf. Buck v. Mountain States Investment Corp., 76 N.M. 261, 265, 414 P.2d 491, 494 (1966) (concluding that reformation may be warranted where a mistake is induced by an agent's "negligence"). "[T]his remedy is best understood as one that sounds not in tort, but in contract." Weinisch, 587 A.2d at 619.

Further, the only mention of a possible counterclaim for the tort of negligence in the *Answer and Counterclaim* occurs in the context of the counterclaim for violations of the Insurance Code. According to Ms. Emerson and NRD, the violation of the Insurance Code provisions cited therein constitutes "negligence *per se*." [Doc. No. 19, at ¶ 50.] The Court has already ruled in NIIC's favor on this theory by granting summary judgment on all violations of the Insurance Code except those pertaining to the cancellation of the policy and the alleged delay in payment of the undisputed $100,000 in UM benefits and $5,000 in medical-payments benefits. [Doc. No. 232.] In light of this ruling, there is no other violation of the Insurance Code on which to base such a counterclaim for negligence *per se*. Further, insofar as an "unfair claims practice" must be "knowingly committed" in order to violate the

provisions of N.M. Stat. Ann. § 59A-16-20, that section of the Insurance Code also does not provide a basis for a counterclaim premised on mere negligence.

Finally, the Court has previously ruled that Ms. Emerson and NRD have failed to meet their burden of coming forward with evidence to support a finding of fraud or misrepresentation by NIIC or its agents relating to the sale of the policy or the refusal to pay more than $100,000 in UM benefits. [Doc. No. 232.] Thus, there are no separate counterclaims for fraud or misrepresentation which remain pending for trial.

It follows from these determinations that the only counterclaims which remain pending for trial in this matter are: (1) equitable reformation of the contract (which will be the subject of a bench trial); (2) breach of contract, insurance bad faith, and violation of the Insurance Code provisions relating to the cancellation of the policy; and (3) breach of contract, insurance bad faith, and violation of the Insurance Code provisions relating to the alleged delay in payment of the undisputed $100,000 in UM benefits and $5,000 in medical-payment benefits.

### E.     NIIC's Motion in Limine

NIIC has filed a motion in limine seeking to exclude, among other things, evidence pertaining to the counterclaims already resolved in its favor by virtue of the Court's prior rulings. [Doc. No. 239.] It follows from the analysis provided above and the Court's prior rulings that Ms. Emerson and NRD are precluded from introducing evidence concerning such counterclaims because they are no longer relevant. Thus, the evidence presented to the jury will be limited to that which is relevant and admissible for purposes of proving the following

counterclaims: (1) breach of contract, insurance bad faith, and violation of the Insurance Code provisions relating to the cancellation of the policy; and (2) breach of contract, insurance bad faith, and violation of the Insurance Code provisions relating to the alleged delay in payment of the undisputed $100,000 in UM benefits and $5,000 in medical-payment benefits.

### III.   CONCLUSION

For the foregoing reasons, the Court clarifies its prior rulings and issues additional rulings as specified herein.

**IT IS, THEREFORE, ORDERED** that:

1. NIIC is entitled to judgment as a matter of law on Native Resource Development, Inc.'s (NRD's) counterclaim for stacking of uninsured motorist (UM) benefits;

2. NIIC is entitled to judgment as a matter of law on Ms. Emerson and NRD's counterclaims for breach of contract, insurance bad faith, and violations of New Mexico's Insurance Code and Unfair Practices Act arising from NIIC's refusal to pay, offer, or sell more than $100,000 in UM benefits;

3. There is no right to a jury trial on the counterclaim for equitable reformation of the insurance contract, and that counterclaim will be tried to the Court;

4. The only counterclaims which remain pending for trial before a jury are those pertaining to the cancellation of the policy and the delay in payment of the undisputed $100,000 in uninsured motorist (UM) benefits and $5,000 in medical-payments benefits;

5.     Evidence which is relevant only to issues resolved in NIIC's favor by virtue of this *Memorandum Opinion and Order* and the Court's prior rulings on dispositive motions will be excluded from the jury trial.

**IT IS FURTHER ORDERED** that NIIC's *Motion in Limine to Exclude Proposed Testimony and Evidence* [Doc. No. 239] is **GRANTED IN PART** as specified herein.

**SO ORDERED**, this 22nd day of January, 2004, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*