## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FILED

04 JAN 23 PM 2: 46

**NATIONAL INTERSTATE INSURANCE
COMPANY, an Ohio Corporation,**
               **Plaintiff,**

vs.

                               No.: CIV-01-1446-MCA/WDS ACE

**PENNY EMERSON, a New Mexico
Resident,**
               **Defendant.**

**and**

**NATIVE RESOURCE DEVELOPMENT, INC.,
a Navajo Nation corporation, as a Real Party in Interest;
PENNY EMERSON,**
               **Counter Plaintiffs,**

vs.

**NATIONAL INTERSTATE INSURANCE
COMPANY, an Ohio Corporation,**
               **Counter Defendant.**

## NATIONAL INTERSTATE INSURANCE COMPANY'S
## AMENDED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

      COMES NOW the Plaintiff-Counterdefendant National Interstate Insurance Company

and submits its amended proposed findings of fact and conclusions of law on the issues for the

bifurcated bench trial on counterplaintiffs' claim for equitable reformation of the insurance

policy—1) the alleged inequitable conduct by Mueller & Associates as alleged agent of National

Interstate, or of National Interstate, to support counterplaintiffs' claim for equitable contract

reformation, and 2) the unclean hands of counterplaintiffs during the insurance transaction, as a

bar and affirmative defense to reformation.

265

Findings of Fact:

1.    National Interstate Insurance Company did not agree or consent that Mueller & Associates was authorized to act as its agent during the purchase of insurance by Native Resource Development, Inc.

2. National Interstate Insurance Company did not ratify the acts or omissions of Mueller & Associates during the purchase of insurance by Native Resource Development, Inc.

3.    National Interstate Insurance Company did not cloak Mueller & Associates with apparent authority to act as National's agent during the purchase of insurance by Native Resource Development, Inc.

4.    National    Interstate    did    not    provide    any    written    material    to    David Krzyzyanowski/Mueller & Associates to provide to potential insureds identifying Mueller & Associates as National Interstate's agent.

5. National Interstate Insurance Company had a written broker agreement with Mueller & Associates that expressly provided that Mueller was not authorized to make representations or promises concerning the coverage quoted by National Interstate Insurance Company.

6. Mueller & Associates had a prior and subsequent business relationship with Native Resource Development, Inc. apart from the period when National Interstate's insurance policy was issued to Native Resource Development, Inc.

7.    David Krzyzyanowski/Mueller & Associates never told Penny Emerson/Native Resource Development, Inc. that he was an agent for National Interstate and could bind National Interstate to certain UM/UIM coverages.

2

8.    David Krzyzyanowski/Mueller & Associates "shopped the market" by soliciting quotes for insurance from multiple insurance companies including National Interstate, on behalf of Native Resource Development, Inc.

9.   At all material times, Mueller & Associates represented itself to Native Resource Development, Inc. as an independent agency that dealt with many different insurance companies on behalf of its clients.

10.   David Krzyzyanowski at Mueller & Associates told Native Resource Development, Inc. that he was offered $60,000 and then $100,000 in New Mexico uninsured motorist benefits from National Interstate Insurance Company.

11.   Mueller & Associates' insurance proposal to Native Resource Development, Inc. included an explanation of uninsured motorist coverage that was drafted by David Krzyzyanowski.

12.    David Krzyzyanowski did not know whether a policy provided stacking of uninsured motorist coverage under various state laws.

13.   David Krzyzyanowski is not a licensed lawyer and does not have a law degree.

14.   David Krzyzyanowski would refer a client to the insurer to answer questions about he policy if he did not know the answer.

15.   Penny Emerson did not know what stacking of uninsured motorist coverage was, until her accident of August 11, 2001.

16.   At no time did Penny Emerson at Native Resource Development, Inc. ask Mueller & Associates or National Interstate Insurance Company any questions about the uninsured motorist coverage that she was purchasing for her company.

17.  Native Resource Development, Inc. failed to express any intention to Mueller & Associates or National Interstate Insurance Company that the company desired more than $100,000 UM New Mexico coverage after that amount was offered by National Interstate.

18.  Native Resource Development, Inc. led Mueller & Associates and National Interstate Insurance Company to believe that $100,000 UM for New Mexico was acceptable and that the policy should be issued in that amount.

19.  Native Resource Development, Inc.'s President, Penny Emerson, twice signed a uninsured motorist coverage selection form without indicating that the company desired more than $60,000 UM for New Mexico.

20.  Upon receiving the insurance policy, Native Resource Development, Inc. did not inform Mueller & Associates or National Interstate Insurance Company that the issued benefits of $100,000 UM New Mexico were not what it intended to purchase.

21.  While Native Resource Development, Inc. requested policy changes for additional or deletions of vehicles to its fleet, it did not ever request a change in policy UM/UIM limits.

22.  National Interstate Insurance Company did not issue uninsured motorist coverage limits greater than $100,000 for New Mexico, and would not have issued a policy with higher limits.

23.  Native Resource Development, Inc. made payment of premiums due under the insurance policy for coverage in the amount of $100,000 UM New Mexico, without ever requesting that UM coverage be increased.

24.  The New Mexico Notice of UM/UIM Coverage provided to Native Resource Development, Inc. did not require an offer of UM/UIM limits equal to liability limits. It required an indication of UM/UIM rejection.

4

25. The Arizona UM/UIM Coverage Selection form contained a written offer for UM/UIM limits equal to liability, but Native Resource Development Inc., failed to request that level of coverage by initialing that option.

26.     Penny Emerson purchased $1 million UM/UIM coverage from her business's prior insurer, the Hartford, minimum UM limits of $25,000 (New Mexico) from her personal insurer, Progressive, and minimum UM limits of $300,000 (Arizona) from her subsequent business insurer, National Fire & Marine

27.     Before issuing the Native Resource Development, Inc. policy, National Interstate was provided a copy of the certification of Mueller & Associate's broker licensure in the State of New Mexico.

28.   At all material times, David Krzyzyanowski was an employee of Mueller & Associates.

29.   At all material times, Penny Emerson/Native Resource Development, Inc. held itself out as a corporation to Mueller & Associates and National Interstate Insurance Company.


Conclusions of Law:

1.  At all times material hereto, Mueller & Associates never acted as agent for National Interstate. See Romero v. Mervyn's, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989); Vickers v. North American Land Developments Inc., 94 N.M. 65, 67, 607 P.2d 603, 605 (1980); Restatement (Second) of Agency, §§8, 27 comment a (1958); N.M.S.A. § 59A-18-24; A.R.S.§ 20-300 (2000).

2.  At all times material to the purchase of insurance by Native Resource Development, Inc., Mueller & Associates was acting as agent for Native Resource Development, Inc. See

Romero v. Mervyn's, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989); Vickers v. North American Land Developments Inc., 94 N.M. 65, 67, 607 P.2d 603, 605 (1980); Restatement (Second) of Agency, §§8, 27 comment a (1958); N.M.S.A. § 59A-18-24; A.R.S.§ 20-300 (2000).

3.  Neither National Interstate Insurance Company nor Mueller & Associates engaged in inequitable conduct capable of supporting an equitable reformation of the insurance policy to provide for UM coverage greater than $100,000 UM New Mexico. See Buck v. Mountain States Investment Corp., 76 N.M. 261 at 264-265, 414 P.2d at 494; Stock v. Adco General Corp., 96 N.M. 544, 549, 632 P.2d 1182, 1187 (Ct. App. 1981); Kimberly, Inc. v. Hays, 88 N.M. 140, 144, 537 P.2d1402, 1406 (1975 ).

4.  Native Resource Development, Inc. has not shown that it is entitled to equitable reformation of the insurance policy to provide for UM coverage greater than $100,000 UM New Mexico. See Buck v. Mountain States Investment Corp., 76 N.M. 261 at 264-265, 414 P.2d at 494; Stock v. Adco General Corp., 96 N.M. 544, 549, 632 P.2d 1182, 1187 (Ct. App. 1981); Kimberly, Inc. v. Hays, 88 N.M. 140, 144, 537 P.2d1402, 1406 (1975 ).

5.  Ms. Emerson has not shown that she had a mistaken belief regarding the availability of stacking $100,000 per-vehicle UM coverage under the policy of insurance as a result of any claimed "inequitable conduct" by National Interstate. See Buck v. Mountain States Investment Corp., 76 N.M. 261 at 264-265, 414 P.2d at 494; Stock v. Adco General Corp., 96 N.M. 544, 549, 632 P.2d 1182, 1187 (Ct. App. 1981); Kimberly, Inc. v. Hays, 88 N.M. 140, 144, 537 P.2d1402, 1406 (1975 ).

6.  Native Resource Development, Inc. had unclean hands during the insurance purchase transaction when it failed to communicate its intentions for coverage to Mueller & Associates

6

and National Interstate Insurance Company and did not attempt to change the policy coverage after the policy issued.

7.   Native Resource Development, Inc.'s claim for contract reformation is barred because the company had unclean hands.

8.   N.M.S.A. §66-5-301 does not require an offer of UM/UIM limits equal to liability coverage; the statute only requires statutory minimum limits of 25,000/50,000/10,000 UM/UIM unless rejected by the insured. *See* Geisler v. Mid-Century Ins. Co., 712 S.W.2d 184 (Tx. Ct. App. 1986) (interpreting similar Texas Uninsured Motorist statute).

9.   Arizona law under A.R.S. § 20-259.01 requires a written offer of UM/UIM limits equal to liability and further requires the insured to communicate any request for that level of coverage to the insurer.  A.R.S. § 20-259.01; State Farm Mut. Automobile Ins. Co. v. Ash, 888 P.2d 1354 (Az. Ct. App. 1994); Spain v. Valley Forge Ins. Co., 731 P.2d 84 (Az. 1987).

10. National Interstate complied with N.M.S.A. §66-5-301 and A.R.S. § 20-259.01 in the negotiation of the policy with Native Resource Development Inc.

11.   Native Resource Development, Inc. failed to comply with A.R.S. section 20-259.01 and Arizona common law because it did not communicate any intent to purchase UM/UIM of $5,000,000 to National Interstate. A.R.S. § 20-259.01; State Farm Mut. Automobile Ins. Co. v. Ash, 888 P.2d 1354 (Az. Ct. App. 1994); Spain v. Valley Forge Ins. Co., 731 P.2d 84 (Az. 1987).

12.   Neither Ms. Emerson, nor Native Resource Development Inc., have stated a private right of action pursuant to N.M.S.A. §59A-5-10; §59A-5-12; §59A-12-2; §59A-11-2; §59A-11-3; §59A-11-12; §59A-12-6; §59A-12-7; §59A-13-2 or §59A-18-24. See Brant v. Geico General Ins. Co., 1992 WL 527226 (S.D. Iowa 1992); Brant v. Geico General Ins. Co., 1992 WL 527237 (S.D. Iowa 1992); and Brant v. Geico General Ins. Co., 3 F.3d 1172 (8th Cir. 1993).

7

13. Native Resource Development Inc. and Penny Emerson have not plead or proved a nexus between National Interstate's or Mueller & Associates' alleged violations of N.M.S.A. §59A-5-10; §59A-5-12; §59A-12-2; §59A-11-2; §59A-11-3; §59A-11-12; §59A-12-6; §59A-12-7; §59A-13-2 or §59A-18-24 and any claim of inequitable conduct to support contract reformation. See Brant v. Geico General Ins. Co., 1992 WL 527226 (S.D. Iowa 1992); Brant v. Geico General Ins. Co., 1992 WL 527237 (S.D. Iowa 1992) and Brant v. Geico General Ins. Co., 3 F.3d 1172 (8th Cir. 1993).

14. A reasonably prudent person in Penny Emerson's position would not believe that David Krzyzyanowski/Mueller & Associates possessed authority to bind National Interstate to any level of UM/UIM coverage. See Romero v. Mervyn's, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989)

15. National Interstate did not engage in acts or conduct to third parties that would give a reasonably prudent person in Penny Emerson's position belief that David Krzyzyanowski/Mueller & Associates possessed authority to bind National Interstate to any level of UM/UIM coverage. See Romero v. Mervyn's, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989); Southwestern Portland Cement v. A. E. Beavers, 82 N.M. 218, 478 P.2d 546 (1970).

16. National Interstate did not manifest consent to David Krzyzyanowski/Mueller & Associates for Mr. Krzyzyanowski/Mueller & Associates to act as agent for National Interstate during the purchase of insurance by Native Resource Development, Inc. See Romero v. Mervyn's, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989)

17. National Interstate was not required to appoint Mueller & Associates as its agent in order to issue the Native Resource Development, Inc. policy in accordance with New Mexico appointment and licensure laws. N.M.S.A. §§ 59A-11-12, 59A-18-24.

8

18. Any absence of any required licensure of Mueller & Associates or National Interstate personnel by the State of New Mexico did not result in any harm or damage to Native Resource Development,Inc. and does not constitute inequitable conduct to support contract reformation.

Respectfully Submitted By,

CIVEROLO, GRALOW, HILL & CURTIS
A Professional Association

By _Lisa E Pullen_
William P. Gralow
Lisa Entress Pullen
Attorneys for the Plaintiff,Counterdefendant
National Interstate Insurance Co.
P.O. Box 887
Albuquerque, New Mexico 87103-0887
Phone: 505-842-8255

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was faxed to opposing counsel as follows on January 23rd, 2004:

Theodore Barudin, Esq.
7900 Menaul Blvd., N.E.
Albuquerque, New Mexico 87110

Steven C. Henry, Esq.
3949 Corrales Road, Suite 120
Corrales, New Mexico 87048

Maureen A. Sanders, Esq.
Sanders & Westbrook, P. C.
102 Granite Avenue, N.W.
Albuquerque, New Mexico 87102-2310

Lisa Entress Pullen

9