IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NATIONAL INTERSTATE INSURANCE
COMPANY, an Ohio Corporation,

    **Plaintiff/Counter Defendant,**

vs.           No.: CIV-01-1446 MCA/WWD [ACE]

PENNY EMERSON, a New Mexico
Resident,

    **Defendant/Counter Plaintiff.**

## NATIONAL INTERSTATE INSURANCE COMPANY'S
## SECOND AMENDED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW the Plaintiff-Counterdefendant National Interstate Insurance Company and, following the bifurcated trial conducted January 26-28, 2004, submits its second amended proposed findings of fact and conclusions of law on the issues on counterplaintiffs' claim for equitable reformation of the insurance policy-1) the alleged inequitable conduct by Mueller & Associates as alleged agent of National Interstate, or of National Interstate, to support counterplaintiffs' claim for equitable contract reformation, and 2) the unclean hands of counterplaintiffs during the insurance transaction, as a bar and affirmative defense to reformation.

Findings of Fact:

1. National Interstate Insurance Company did not agree or consent that Mueller & Associates was authorized to act as its agent during the purchase of insurance by Native Resource Development, Inc.

**Exhibits:** Defendant's Exs. LLL (3L); TTTT (4T); AAAAA (5A); MMMMM (5M);

**Witnesses:** David Krzyzyanowski; Nancy Terrill; Jim Parks.



2. National Interstate Insurance Company did not ratify the acts or omissions of Mueller & Associates during the purchase of insurance, by Native Resource Development, Inc.

**Exhibits:** Defendant's Exs. LLL (3L); TTTT (4T); AAAAA (5A); BBBBB (5B); MMMMM (5M); CCCCC (5C); DDDDD (5D);

**Witnesses:** David Krzyzyanowski; Nancy Terrill; Jim Parks.

3. National Interstate Insurance Company did not cloak Mueller & Associates with apparent authority to act as National's agent during the purchase of insurance by Native Resource Development, Inc.

**Exhibits:** Defendant's Exs. LLL (3L); OOOO (4O); QQQQ (4Q); RRRR (4R); TTTT (4T); ZZZZ (4Z); AAAAA (5A); BBBBB (5B); MMMMM (5M); CCCCC (5C); DDDDD (5D); EEEEE (5E); FFFFF (5F); GGGGG (5G); KKKKK (5K); LLLLL (5L).

**Witnesses:** David Krzyzyanowski; Nancy Terrill; Jim Parks; Penny Emerson.

4. National Interstate did not provide any written material to David Krzyzyanowski/Mueller & Associates to provide to potential insureds identifying Mueller & Associates as National Interstate's agent.

**Exhibits:** Defendant's Exs. RRRR (4R); MMMMM (5M); KKKKK (5K); LLLLL (5L).

**Witnesses:** David Krzyzyanowski; Nancy Terrill; Jim Parks; Penny Emerson.

5. National Interstate Insurance Company had a written broker recognition agreement with Mueller & Associates that expressly provided that Mueller was not authorized to make representations or promises concerning the coverage quoted by National Interstate Insurance Company.

**Exhibits:** Defendant's Exs. MMMMM (5M);

**Witnesses:** David Krzyzyanowski; Nancy Terrill; Jim Parks.

6. Mueller & Associates had a prior and subsequent business relationship with Native Resource Development, Inc. apart from the period when National Interstate's insurance policy was issued to Native Resource Development, Inc.

**Exhibits:** Defendant's Exs. KKK (3K); LLL (3L); MMM (3M); PPP (3P); QQQ (3Q); RRR (3R); SSS (3S); VVV (3V); WWW (3W); XXX (3X); YYY (3Y); DDDD (4D); DDDD-1 (4D-1); EEEE (4E); FFFF (4F); GGGG (4G); HHHH (4H); QQQQ (4Q); HHHHH (5H); JJJJ (5J);

**Witnesses:** Penny Emerson; Cindy Ben; David Krzyzyanowski.

7. The activities by David Krzyzyanowski/Mueller & Associates on behalf of Penny Emerson/Native Resource Development, Inc. to obtain a variety of commercial insurance coverages before and after the National Interstate transaction, were consistent with and very similar to his activities on Ms. Emerson's/Native Resource's behalf during the National Interstate transaction.

**Exhibits:** Defendant's Exs. KKK (3K); LLL (3L); MMM (3M); PPP (3P); QQQ (3Q); RRR (3R); SSS (3S); VVV (3V); WWW (3W); XXX (3X); YYY (3Y); DDDD (4D); DDDD-1 (4D-1); EEEE (4E); FFFF (4F); GGGG (4G); HHHH (4H); NNNN (4N); OOOO (4O); PPPP (4P); QQQQ (4Q); RRRR (4R); UUUU (4U); VVVV (4V); WWWW (4W); HHHHH (5H); IIIII (5I); JJJJJ (5J); KKKKK (5K); LLLLL (5L);

**Witnesses:** Penny Emerson; Cindy Ben; David Krzyzyanowski.

8. David Krzyzyanowski/Mueller & Associates never told Penny Emerson/Native Resource Development, Inc. that he was an agent for National Interstate and could bind National Interstate to certain UM/UIM coverages.

**Exhibits:** Defendant's Exs. DDDD (4D); DDDD-1 (4D-1); OOOO (4O); PPPP (4P); QQQQ (4Q); RRRR (4R); YYYY (4Y); ZZZZ (4Z); DDDDD (5D); FFFFF (5F); GGGGG (5G); HHHHH (5H); IIIII (5I); KKKKK (5K); LLLLL (5L);

**Witnesses:** David Krzyzyanowski; Penny Emerson.

9. Penny Emerson understood that David Krzyzyanowski/Mueller & Associates was not the insurance company and that he could not issue an insurance policy.

**Exhibits:** None.

**Witnesses:** Penny Emerson.

10. Penny Emerson did not know or understand whether David Krzyzyanowski was her and her company's agent or National Interstate's agent.

**Exhibits:** None.

**Witnesses:** Penny Emerson.

11. David Krzyzyanowski/Mueller & Associates "shopped the market" by soliciting quotes for insurance from multiple insurance companies including National Interstate, on behalf of Native Resource Development, Inc.

**Exhibits:** Defendant's Exs. DDDD (4D); DDDD-1 (4D-1); EEEE (4E); FFFF (4F); GGGG (4G); HHHH (4H); MMMM (4M); NNNN (4N); OOOO (4O); PPPP (4P); QQQQ (4Q); RRRR (4R); SSSS (4S); TTTT (4T).

**Witnesses:** David Krzyzyanowski; Penny Emerson.

12. At all material times, Mueller & Associates represented itself to Native Resource Development, Inc. as an independent agency that dealt with many different insurance companies on behalf of its clients.

**Exhibits:** : Defendant's Exs. KKK (3K); QQQ (3Q); SSS (3S); VVV (3V); WWW (3W); XXX (3X); YYY (3Y); DDDD (4D); DDDD-1 (4D-1); EEEE (4E); FFFF (4F); GGGG (4G); HHHH (4H); OOOO (4O); QQQQ (4Q); RRRR (4R); YYYY (4Y); ZZZZ (4Z); DDDDD (5D); FFFFF (5F); GGGGG (5G); HHHHH (5H); IIIII (5I); JJJJJ (5J); KKKKK (5K); LLLLL (5L);

**Witnesses:** David Krzyzyanowski; Penny Emerson; Cindy Ben.

13. David Krzyzyanowski at Mueller & Associates told Native Resource Development, Inc. orally and in writing, that he was quoted $100,000 in New Mexico uninsured motorist benefits by National Interstate Insurance Company.

**Exhibits:** Defendant's Exs. RRRR (4R);

**Witnesses:** David Krzyzyanowski; Penny Emerson.

14. Mueller & Associates' written insurance proposal to Native Resource Development, Inc. included an explanation of uninsured motorist coverage that was drafted by David Kryzyzanowski.

**Exhibits:** Defendant's Exs. RRRR (4R);

**Witnesses:** David Krzyzyanowski; Penny Emerson.

15. David Krzyzyanowski was not a lawyer and did not hold a law degree.

**Exhibits:** None.

**Witnesses:** David Krzyzyanowski.

16. David Krzyzyanowski would refer a client to the insurer to answer questions about the policy if he did not know the answer.

**Exhibits:** None.

**Witnesses:** David Krzyzyanowski.

5

17. Before she obtained the National Interstate insurance policy, Penny Emerson understood that uninsured motorist coverage was to protect oneself from damages caused by an uninsured driver.

**Exhibits:** None.

**Witnesses:** David Krzyzyanowski.

18. Penny Emerson did not know what stacking of uninsured motorist coverage was, until after her accident of August 11, 2001.

**Exhibits:** None.

**Witnesses:** Penny Emerson.

19. Apart from her contact with David Krzyzyanowski, Penny Emerson and Native Resource Development, Inc. had several insurance advisors and lawyers available to them to seek advice or explanation on insurance matters, but Ms. Emerson never contacted any of them during the National Interstate transaction.

**Exhibits:** Defendant's Exs. KKK (3K); CCCC (4C).

**Witnesses:** Penny Emerson; Cindy Ben.

20. At no time did Penny Emerson at Native Resource Development, Inc. ask Mueller & Associates or National Interstate Insurance Company any questions about the uninsured motorist coverage that she was purchasing for her company.

**Exhibits:** Defendant's Exs. EEEEE (5E); FFFFF (5F); HHHHH (5H); IIIII (5I).

**Witnesses:** Penny Emerson; David Krzyzyanowski; Nancy Terrill; Jason Hradek; Jim Parks.

21. The National Interstate insurance policy and the New Mexico notice of uninsured motorist coverage forms provided to Ms. Emerson on at least three occasions, described whether

stacking of uninsured motorist coverage was available, the definition of Class 1 and 2 insureds, and the difference in limits of coverage available to Class 1 and 2 insureds.

**Exhibits:** Defendant's Exs. C; HHH (3H); III (3I); CCCCC (5C); DDDDD (5D); EEEEE (5E); FFFFF (5F);

**Witnesses:** Jim Parks.

22. Penny Emerson, on behalf of her company Native Resource Development, Inc., never read the New Mexico notice of uninsured motorist coverage forms she signed twice, other than item "A" that had an "x" typed on its selection line for $60,000 CSL uninsured motorist coverage limits.

**Exhibits:** Plaintiff's Exs. 30, 48; Defendant's Exs. C, EEEEE.

**Witnesses:** Penny Emerson.

23. Penny Emerson, on behalf of her company Native Resource Development, Inc., never read the business insurance policy issued by National Interstate, a copy of which she received May 22, 2001, other than the front page of the policy indicating the total premium charges for the auto and general liability policies, and the line item of the coverages declarations page for auto liability coverage of "$5,000,000 liability."

**Exhibits:** Plaintiff's Ex. 50; Defendant's Ex. C.

**Witnesses:** Penny Emerson.

24. National Interstate Insurance Company's preference was to issue statutory minimum uninsured motorist coverage limits in policies, but as a result of negotiations with Mueller & Associates, it agreed to quote $100,000 for New Mexico UM coverage for Native Resource Development, Inc.

**Exhibits:** Defendant's Exs. HHH (3H); III (3I); NNNN (4N); SSSS (4S); TTTT (4T);

**Witnesses:** David Krzyzyanowski; Nancy Terrill; Jason Hradek; Jim Parks.

25. National Interstate's preference to issue statutory minimum uninsured motorist coverage limits was consistent with industry customs and standards for the nonemergency medical transport risk such as Native Resource Development, Inc., which was a specialized and narrow market for insurance; the only other quotes from other insurers obtained by David Krzyzyanowski was for statutory minimum uninsured motorist limits.

**Exhibits:** Defendant's Exs. QQQ (3Q); RRR (3R); SSS (3S); VVV (3V); WWW (3W); YYY (3Y); DDDD-1 (4D-1); EEEE (4E); FFFF (4F); GGGG (4G); HHHH (4H);

**Witnesses:** Penny Emerson; David Krzyzyanowski; Jim Parks.

26. Penny Emerson/Native Resource Development, Inc. failed to express any intention to Mueller & Associates or to National Interstate Insurance Company that she/it desired $5 million in uninsured motorist coverage after she reviewed National Interstate's quote for $100,000 New Mexico uninsured motorist coverage with David Krzyzyanowski in Phoenix, Arizona.

**Exhibits:** Defendant's Exs. UUUU (4U); VVVV (4V); ZZZZ (4Z); EEEEE (5E); FFFFF (5F); IIII (5I);

**Witnesses:** Penny Emerson; David Krzyzyanowski; Nancy Terrill; Jason Hradek; Jim Parks.

27. Penny Emerson/Native Resource Development, Inc. led Mueller & Associates and National Interstate Insurance Company to believe that $100,000 UM New Mexico was acceptable and that the policy should be issued in that amount.

**Exhibits:** Defendant's Exs. UUUU (4U); VVVV (4V); ZZZZ (4Z); AAAAA (5A); BBBBB (5B); CCCCC (5C); DDDDD (5D); EEEEE (5E); FFFFF (5F); IIII (5I);

**Witnesses:** David Krzyzyanowski; Nancy Terrill; Jason Hradek; Jim Parks.

28. Native Resource Development, Inc.'s President, Penny Emerson, twice signed the New Mexico notice of uninsured motorist coverage, on December 7, 2000 and March 15, 2001, without indicating that the company desired more than $60,000 UM coverage for New Mexico.

**Exhibits:** Plaintiff's Exs. 30, 48; Defendant's Exs. C, EEEEE (5E);

**Witnesses:** Penny Emerson; David Krzyzyanowski; Nancy Terrill; Jason Hradek; Jim Parks.

29. Upon receiving the insurance policy, Penny Emerson/Native Resource Development, Inc. did not inform Mueller & Associates or National Interstate Insurance Company that the issued benefits of $100,000 UM New Mexico were not what she/it intended to purchase.

**Exhibits:** Plaintiff's Exs. 30, 48, 50; Defendant's Exs. C, GGGGG (5G), EEEEE (5E);

**Witnesses:** Penny Emerson; David Krzyzyanowski; Nancy Terrill; Jim Parks.

30. While Native Resource Development, Inc. requested policy changes for additional or deletions of vehicles to its fleet, it did not ever request a change in policy uninsured motorist coverage limits at any time.

**Exhibits:** Defendant's Exs. C; IIIII (5I);

**Witnesses:** Penny Emerson; David Krzyzyanowski; Nancy Terrill; Jason Hradek; Jim Parks.

31. Native Resource Development, Inc. made payment of premiums due under the insurance policy for New Mexico UM coverage in the amount of $100,000, without ever requesting that the UM coverage be increased.

**Exhibits:** Plaintiff's Ex. 38; Defendant's Exs. C; ZZZZ (4Z); IIIII (5I);

**Witnesses:** Penny Emerson; David Krzyzyanowski; Nancy Terrill; Jason Hradek; Jim Parks.

32. Penny Emerson/ Native Resource Development, Inc. never requested or purchased $5 million in uninsured motorist coverage from any prior or subsequent insurer for her business insurance or personal insurance.

**Exhibits:** Defendant's Exs. FFF; PPP; RRR; SSS; VVV; WWW; XXX; CCCC; JJJJ

**Witnesses:** Penny Emerson; David Krzyzyanowski.

33. The New Mexico notice of UM/UIM coverage provided to Native Resource Development, Inc. did not require an offer of UM/UIM limit equal to liability limits; the form required an indication of UM/UIM rejection, and explained that the insured was able to request UM/UIM up to policy liability limits.

**Exhibits:** Plaintiff's Exs. 30, 48; Defendant's Exs. C.

**Witnesses:** Jim Parks.

34. The New Mexico notice of UM/UIM coverage used by National Interstate had been approved by the company's legal department.

**Exhibits:** Plaintiff's Exs. 30, 48; Defendant's Exs. C.

**Witnesses:** Jim Parks.

35. At all material times, National Interstate Insurance Company did not appoint agents to sell its insurance policies.

**Exhibits:** None.

**Witnesses:** Nancy Terrill; Jim Parks.

36. National Interstate Insurance Company had a copy of a New Mexico nonresident broker's license for Robert Mueller of Mueller & Associates in its files when Mueller & Associates submitted the application for insurance for Native Resource Development, Inc.

**Exhibits:** Defendant's Ex. NNNNN (5N) was tendered but refused.

10

**Witnesses:** Jim Parks.

37. The Broker Recognition Agreement required the submitting broker, Mueller & Associates, to obtain and maintain any required licenses.

**Exhibits:** Defendant's Ex. MMMMM (5M).

**Witnesses:** Nancy Terrill; Jim Parks.

38. At least two of Mueller & Associates' employees were licensed by the State of New Mexico Department of Insurance when Mueller & Associates submitted the application for insurance for Native Resource Development, Inc.

**Exhibits:** Defendant's Ex. PPPPP (5P) was tendered but refused.

**Witnesses:** Jim Parks.

39. At all material times, David Krzyzyanowski was an employee of Mueller Associates.

**Exhibits:** Defendant's Exs. RRRR (4R); LLLLL (5L).

**Witnesses:** David Krzyzyanowski.

40. At all material times, Penny Emerson/Native Resource Development, Inc. held itself out as a corporation to Mueller & Associates and National Interstate Insurance Company.

**Exhibits:** Defendant's Exs. CCCC (4C); DDDD (4D); OOOO (4O); VVVV (4V); WWWW (4W); XXXX (4X); YYYY (4Y); ZZZZ (4Z).

**Witnesses:** Penny Emerson; David Krzyzyanowski; Jason Hradek.

41. Penny Emerson testified at trial that Native Resource Development, Inc. was a corporation in 1999 and 2000.

**Exhibits:** Defendant's Exs. CCCC (4C); DDDD (4D); OOOO (4O); VVVV (4V); WWWW (4W); XXXX (4X); YYYY (4Y); ZZZZ (4Z).

**Witnesses:** Penny Emerson.

42.     The testimony of plaintiff's expert Garth Allen was unfounded, and was not credible or helpful to the trier of fact.

**Exhibits:** None.

**Witnesses:** Garth Allen.

Conclusions of Law:

1. At all times material hereto, Mueller & Associates never acted as agent for National Interstate. Romero v. Mervyn's, 109 N.M. 249, 253, 784 P.2d 992, 996 (1981)); Vickers v. North American Land Developments Inc., 94 N.M. 65, 67, 607 P.2d 60,, 605 (1980); Restatement (Second) of Agency, §§8, 27 comment a (1958); N.M.S.A. § 59A-18-24; A.R.S.§ 20-300 (2000).

2. At all times material to the purchase of insurance by Native Resource Development, Inc., Mueller & Associates was acting as agent for Native Resource Development, Inc. Romero v. Mervyn's, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989); Vickers v. North American Land Developments, Inc., 94 N.M. 65, 67, 607 P. 2d 603, 605 (1980); Restatement (Second) of Agency, §§8, 27 comment a (1958); N.M.S.A. § 59A-18-24; A.R.S.§ 20-300 (2000).

3. Neither National Interstate Insurance Company nor Mueller & Associates engaged in inequitable conduct capable of supporting an equitable reformation of the insurance policy to provide for uninsured motorist coverage greater than $100,000 UM New Mexico. Buck v. Mountain State Investment Co., 76 N.M. 261, 264-265 (1966); Stock v. Adco General Corp., 96 N.M. 544, 549, 632 P.2d 1182, 1187 (Ct. App. 1981); Kimberly, Inc. v. Hays, 88 N.M. 140, 144, 537 P.2d 1402, 1406 (1975).

4. Native Resource Development, Inc. has not shown that it is entitled to equitable reformation of the insurance policy to provide for uninsured motorist coverage greater than

$100,000 UM New Mexico. Buck v. Mountain States Investment Co, 76 N.M. 261, 264-265 (1966); Stock v. Adco General Corp., 96 N.M. 544, 549, 632 P.2d 1182, 1187 (Ct. App. 1981); Kimberly, Inc. v. Hays, 88 N.M. 140, 144, 537 P.2d 1402, 1406 (1975).

5. Ms. Emerson has not shown that she had a mistaken belief regarding the availability of stacking $100,000 per vehicle UM-New Mexico coverage under the policy of insurance as a result of any claimed "inequitable conduct" by National Interstate. Buck v. Mountain States Investment Co, 76 N.M. 261, 264-265 (1966); Stock v. Adco General Corp., 96 N.M. 544, 549, 632 P.2d 1182, 1187 (Ct. App. 1981); Kimberly, Inc. v. Hays, 88 N.M. 140, 144, 537 P.2d 1402, 1406 (1975).

6. Penny Emerson/Native Resource Development, Inc. had unclean hands during the insurance purchase transaction because she/it failed to communicate her/its intentions for $5 million uninsured motorist coverage to Mueller & Associates and National Interstate Insurance Company, and did not attempt to change the policy coverage after the policy issued. Romero v. The Bank of the Southwest, 2003-NMCA-124, 2003 WL 22508849, * 10 (N.M. Ct. App. 2003); 27A Am. Jur. 2d Equity § 133.

7. Penny Emerson/Native Resource Development, Inc.'s claim for contract reformation is barred because she/the company had unclean hands. Romero v. The Bank of the Southwest, 2003-NMCA-124, 2003 WL 22508849, * 10 (N.M. Ct. App. 2003); 27A Am. Jur. 2d Equity § 133.

8. N.M.S.A. §66-5-301 does not require an offer of UM/UIM limits equal to liability coverage; the statute only requires statutory minimum limits of $25,000 per person/50,000 per accident/10,000 property damage UM/UIM limits unless rejected by the insured. *See* Geisler v. Mid-Century Ins. Co., 712 S.W.2d 184 (Tx. Ct. App. 1986) (interpreting similar Texas Uninsured Motorist statute).

9. National Interstate complied with N.M.S.A. §66-5-301 in the negotiation of the policy with Native Resource Development Inc.

10. National Interstate had no duty to make Native Resource Development, Inc. aware of the importance of uninsured motorist coverage, the significance of the coverage, or of the ramifications of Native Resource's decision regarding coverage. Vigil v. Rio Grande Ins. of Santa Fe, 124 N.M. 324, 327-38, 950 P.2d 297, 300-301 (Ct. App. 1997).

11. David Krzyzyanowski/Mueller & Associates had no duty to explain to Native Resource Development, Inc. the significance of uninsured motorist coverage or the ramifications of Native Resource Development, Inc.'s decisions regarding uninsured motorist coverage. Vigil v. Rio Grande Ins. of Santa Fe, 124 N.M. 324, 327-38, 950 P.2d 297, 300-301 (Ct. App. 1997).

12. The insurance binder, the issued insurance policy and the New Mexico notice of uninsured motorist/underinsured motorist coverage clearly informed Penny Emerson/Native Resource Development, Inc. that she was purchasing substantially less than $5 million New Mexico uninsured motorist coverage. Vigil v. Rio Grande Ins. of Santa Fe, 124 N.M. 324, 327-38, 950 P.2d 297, 300-301 (Ct. App. 1997).

13. Neither Ms. Emerson, nor Native Resource Development Inc., have stated a private right of action pursuant to N.M.S.A. §59A-5-10; §59A-5-12; §59A-12-2; §59A-11-2; §59A-11-3; §59A-11-12; §59A-12-6; §59A-12-7; §59A-13-2 or §59A-18-24. See id; and Brant v. Geico General Ins. Co. 1992 WL 527226 (S.D. Iowa 1992); Brant v. Geico General Ins. Co. 1992 WL 527237 (S.D. Iowa 1992); and Brant v. Geico General Ins. Co., 3 F.3d 1172 (8th Cir. 1993).

14. Native Resource Development Inc. and Penny Emerson have not plead or proved a nexus between National Interstate's or Mueller & Associates' alleged violations of N.M.S.A. §59A-5-10; §59A-5-12; §59A-12-2; §59A-11-2; §59A-11-3; §59A-11-12; §59A-12-6; §59A-12-7; §59A-

14

13-2 or §59A-18-24 and any claim of inequitable conduct to support contract reformation. *See* Brant v. Gieco General Ins. Co. 1992 WL 527226 (S.D. Iowa 1992); Brant v. Geico General Ins. Co. 1992 WL 527237 (S.D. Iowa 1992); and Brant v. Geico General Ins. Co.. 3 F.3d 1172 (8th Cir. 1993).

15. A reasonably prudent person in Penny Emerson's position would not believe that David Krzyzyanowski/Mueller & Associates possessed authority to bind National Interstate to any level of UM/UIM coverage, based on any acts of National Interstate. Romero v. Mervyn's, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989).

16. National Interstate did not engage in acts or conduct to third parties that would give a reasonably prudent person in Penny Emerson's position belief that David Krzyzynowski/Mueller & Associates possessed authority to bind National Interstate to any level of UM/UIM coverage. Romero v. Mervyn's, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989); Southwestern Portland Cement v. A.E. Beavers, 82 N.M. 218, 478 P.2d 546 (1970)).

17. National Interstate did not manifest consent to David Krzyzyanowski/Mueller & Associates for Mr. Krzyzanowski/Mueller & Associates to act as agent for National Interstate during the purchase of insurance by Native Resource Development. Inc. Romero v. Mervyn's, 109 N.M. 249, 253, 784 P.2d 992, 996 (1989).

18. In accordance with New Mexico appointment and licensure laws, National Interstate was not required to appoint Mueller & Associates as its agent in order to issue the Native Resource Development, Inc. policy. N.M.S.A. §§ 59A-11-12, 59A-18-24.

19. Any absence of any required licensure of Mueller and Associates or National Interstate personnel by the State of New Mexico did not result in any harm or damage to Native Resource Development, and does not constitute inequitable conduct to support contract reformation.

20. Native Resource Development, Inc. did not prove any damages to warrant equitable contract reformation.

21. Penny Emerson's claim for uninsured motorist coverage was made under the policy's New Mexico uninsured motorist endorsement, and, the court rejects Ms. Emerson's claim to reform that endorsement to provide her more than the bargained-for $100,000 policy limits.

Respectfully Submitted By,

CIVEROLO, GRALOW, HILL & CURTIS,
A Professional Association

By /s/ Lisa E Pullen
William P. Gralow/Lisa Entress Pullen
Attorneys for the Plaintiff-Counterdefendant National Interstate Insurance Co.
P.O. Box 887
Albuquerque, New Mexico 87113-0887
Phone: 505-842-8255

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was mailed to opposing counsel as follows on February 2, 2004:

Theodore Barudin, Esq.
7900 Menaul Blvd. N.E.
Albuquerque, New Mexico 87110

Steven C. Henry, Esq.
3949 Corrales Road, Suite 120
Corrales, New Mexico 87048

Maureen A. Sanders, Esq.
Sanders & Westbrook, P. C.
102 Granite Avenue, N.W.
Albuquerque, New Mexico 87102-2310

/s/ Lisa E Pullen
Lisa Entress Pullen